The opinion of the court was delivered by
Nicholls, C. J.
Accused (John Wright, Adam Wright and William Wright) were tried and convicted of petty larceny, and having been sentenced to one year’s imprisonment in the penitentiary, they have appealed.
They rely on a motion on which they sought to quash the venire and challenge the array of jurors, and upon several bills of exception taken to rulings of the District Court with reference to the introduction of testimony. The motion referred to is based upon the same grounds which were taken in the case of *State vs. Thibodeaux, recently decided, and therein held not well founded. The decisions in these cases control to that extent the present one.
*1527 In the first bill of exception it is recited that one of the defendants (John Wright) being on the stand, he was asked by counsel for the State “whether he knew whether on Thursday night Adam Wright (another of the defendants) had a calf tied to the fence back of his house;” that counsel for defendant objected to the question on the ground “that while defendants were charged with stealing a calf from one Simon a day or two after the Thursday alluded to, there was nothing to connect the calf tied to the fence vith the calf stolen, and the question was irrelevant; and for the further reason that defendant had not been examined in chief on that subject, and could not be cross-examined thereon, same being new matter. Counsel claimed that the evidence showed no direct evidence that Adam and William Wright (defendants) participated in the taking of the calf alleged to have been stolen, they having simply “ helped John Wright, then ru ,ning a butchery, to butcher the calf, and one Simon having brought up the calf from the pasture.” That the testimony showed that John Wright had tried to buy another calf from one Quebodeaux that morning; that the question asked had a tendency to injure Adam Wright, and prejudice the jury against him.” The court declared in the bill that the evidence, as a matter of fact, was brought out on the examination in chief, and was not new matter; that there was proof that one of the defendants had a calf tied to the fence on the Thursday referred to; that all the defendants participated in the larceny, and the pleas that they were innocent agents of each other found no favor with the jury.”
The second bill recites that the same witness was asked on cross-examination by the State: “ Did you tell Adam Simon in presence of Anding, on the day of your arrest, when you were going with the deputy to get your brother George, that Adam Simon had nothing to do with the stealing of the calf, and he (Adam) did not know but that you bought the calf from Brewer?” that objection was made to the qu ¡stion for the reason that it had not been brought out on direct examination; also because it incriminated the witness, who could not be made to incriminate himself, and that it was irrelevant and inadmissible. The court states that “ the question was asked the witness for the purpose of contradiction; that the question had been divided, and witness had already answered that he had gone with the deputy sheriff to get his brother George, and balance of question was put when objection was made to the latter portion; *1528 objection was made to first question as well as second one. Adam. Simon while on the stand as a witness for the State did state, in his examination in chief, that John Wright, in presence of Anding, on the day of his arrest, at the time and place in question, above objected to, that he and Adam Simon had nothing to do with stealing the calf and knew nothing about it, and the question was allowed because it tended directly to rebut and disprove the theory of the defence, the defence maintaining that Adam Simon, the witness on the stand, had himself stolen the calf, and that they were only innocent agents assisting in the butchery, and did not travel beyond the examination-in-chief, but on the contrary, was directly in line with the same. Furthermore, the question was permitted to be asked to shake the credit of the witness and to contradict him out of his own mouth by showing previous contradictory statements.”
The third bill recites that the same witness (John Wright) was asked by the State on cross-examination whether Adam Wright had offered to compromise the case; that the question was objected to by counsel for defendant, as same had not been brought out on direct examination; that the question was irrelevant and inadmissible and would tend to prejudice the jury against William Wright. The court allowed the question “because the answer tended to show the motives of Adam Wright, and to show the relation Adam bore toward the crime, Adam himself being one of the parties charged in the indictment with the stealing. The subject had been fully brought out in chief, because Adam had set up through the same witness the defence that he was an innocent agent, and cross-examination went directly to break down and impeach his direct examination on this point.”
The fourth bill recites that the witness John Wright was asked, on cross-examination by the State, “ whether there was any excursion to the Gulf to which he was to furnish meat about the time the calf was alleged to have been stolen; ” that the question was objected to on the ground that same had not been brought out on direct examination, and consequently was irrelevant and inadmissible. The court stated: “The question was elicited on the examination in chief to show that Adam alone was interested in the butchery, the other defendants protecting themselves under the plea of innocent agency. The question was asked to show the true relation of all the defendants toward the crime, which was that John Wright made *1529 arrangements to sell the meat to the Gulf excursionists, and after' this was arranged all the defendants joined together and stole the calf. On this line the evidence did not transcend the limits of examination in chief, but, on the contrary, was directly in line with it.”
In State vs. Kennon, 45 An. 1195, referring to the bill of exceptions reserved in that case, we said: “The bill states that the District Attorney was permitted, over the objection of the accused, to ask him a certain question, but it goes no further: whether the question was asked or not; whether, if asked, the accused refused to answer it or not; what he answered (if he did answer) is not stated. It may well be that the accused answered the question, saying he had never been a fugitive from justice, and may have so stated perfectly consistently with the truth. In other words, even though the question may improperly have been permitted to be asked, the permission to ask may have resulted in no injury. Not only error, but injury must be alleged and shown to justify the reversal of a judgment. Appellant has alleged error, but has not alleged or shown injury.”
The present case stands before us in the same situation as did that of the State vs. Kennon. We are not informed what answers were made to the questions stated to have been improperly permitted to be asked. It not infrequently happens that an improper question elicits an answer directly the reverse of that which the questioner expected. Granting, however, that in this case answers were given such as the questioner expected, we are unable to say from the bill what influence or effect the answers would have had upon the jury. (See on this subject 63 N. W. 447.) The principal complaint urged is that of irrelevancy and inadmissibility. Irrelevancy, as we have heretofore said in 47 An. 4, State vs. Dixon (particularly in Louisiana in criminal matters, where the whole evidence is not brought up), is a weak objection — not that irrelevant testimony may not sometimes be in point of fact very prejudicial testimony before a jury when permitted to go to it. We would, however, in the absence of a recital of facts and a recital of the condition of the case as to the testimony, actually elicited in it naturally assume that irrelevant testimony would (as it should not) have any weight with the jury. Permission by the court to introduce testimony as against an objection of irrelevancy would carry with it primarily the presumption that the condition of the evidence *1530 was such as to justify aud authorize its admission. An affirmative showing should be made to this court to enable it to .see for itself whether the testimony declared to be irrelevant -would be likely to produce injury and enable it to say that it was, in point of fact, irrelevant. One of the objections urged by the defendant is that a question was permitted to be asked concerning a calf tied to a fence on a certain Thursday night when there was nothing to connect the same with that alleged to have been stolen. Whether there was or there was not evidence connecting the two is a matter of fact of which we have no knowledge. The statement is a conclusion of the accused which may have been entirely wrong, but while there may have been at that particular time no connection shown — such connection, we presume, would have been, at least, attempted to be shown later. There was no motion made to strike out the testimony (Rice on Criminal Evidence, Sec. 256 et seq.). The State is not tied down absolutely in the order of its proof. If no connection was shown the result, doubtless, was that the matter inquired into worked no harm. The bills of excep- ' tions taken are, some of them, taken in the name of the defendants generally; others, simply in the name of the “defendant,” without specifying the particular defendant excepting. Where there are several defendants, bills on behalf of a particular defendant should specially give his name. While the view we have taken of this case makes it unnecessary for us strictly to express any opinion on the subject it may be well to say that one of the questions asked of John Wright, when on the stand (the question as to whether or not Adam Wright had not offered to compromise the case) should not have been asked. What answer was given to that question we do not know, but in civil matters it is a rule that mere proposals for a compromise or negotiations to effect one, are not generally admissible, though evidence may be given of any fact or distinct liability admitted in the proposals, negotiations or conversations, the party sought to be affected being entitled to the benefit of the whole conversation or proposal. Delogny vs. Rentoul, 2 Martin, 175; Agricultural Bank of Mississippi vs. Barque Jane, 19 La. 1. We see no reason why this rule should be less applicable in criminal matters. Defendants complain that the State was permitted to cross-examine -one of the accused when on the stand as a witness, concerning mat.ters not testified to by him in his examination in chief, and our *1531 attention is directed to State vs. Underwood, 44 An. 852, as conclusively establishing their right to relief. There is an essential difference between that case and this. In the former case the judge did not question the correctness of the recitals of the bill, while in this case he does so. In the case cited, we declare that “ where there was a difference between the judge and counsel as to the circumstances connected with a bill of exception the statements of the former are to be taken as true.” The argument urged by defendant on this subject demonstrates the importance of District Judges examining carefully the recitals of the accused set forth in his bills before assigning the special reasons which may have influenced them in their ruling and of their negativing entirely or modifying the recitals when incorrect. It is claimed that in the absence of such .action the situation is that of a defendant wh), without pleading the general issue or making special denials, relies exclusively upon special defences, which leave the allegations of the petition uncontested and the case to be depended solely on the merits of the special defence.
The reasons assigned by the District Judge in some of the bills are by no means satisfactory, and leave us in doubt as to whether, while stating conclusions and opinions formed by him, he is not reasoning from entirely wrong premises. Testimony perfectly admissible when drawn, and if drawn from an ordinary witness, might be totally inadmissible when elicited from an accused and tested as to its admissibility by the rule that the cross-examination of an accused when on the stand as a witness should only extend to matters concerning which he had given his testimony. As we said in the Underwood case, the questions might well be asked as properly bearing upon the case, and ‘ ‘ yet not be asked of this particular witness.” It is of the utmost importance in the consideration of questions touching the scope of the'examination of accused parties when on the stand as witnesses that we should be brought to a knowledge as to what was exactly testified to by them in chief and also as to what was sought to be elicited from them on cross-examination, and as to what was the result of that cross-examination if permitted. The prosecuting officer and the counsel of the accused should each make recitals of what the facts testified to were, and not deal in sweeping declarations on the one hand that the cross-examination was clearly within the limitations of the law, and on the other that it was not. The court, standing thoroughly impartial between the *1532 State and the prisoner, should make its own recital of the testimony, and not send cases up to us resting for decision upon mere conclu - sions of its own on that subject. In one of the bills in the record the court states that “ all the accused participated in the larceny, and their pleas that they were innocent agents of each other found no favor with the jury.” The proposition before the court was simply that of the admissibility of the testimony as affecting the question to be submitted to the jury whether accused did or did not participate in the larceny. Whether or not they did so was the very matter at issue. The jury’s subsequent conclusions could have no legal bearing in determining the legal correctness or incorrectness of the rulings of the court upon the testimony to be sent before them for the purpose of reaching those conclusions.
We do not think even if the questions had been answered, as accused would have us assume them to have been answered, they would have led up to serious injury or wrong, or affected the verdict.
For the reasons assigned, the judgment appealed from is affirmed.

The ease of the State of Louisiana vs. Thibodeaux, No. 12,226 of the docket of the Supreme Court, did not become final until January 4, 1697; the opinion will appear in 49fch Annual. The following is the syllabus:
1. The jury law of 1894 authorizes a trial judge, when, in his discretion he thinks it necessary and proper, to require the Jury Commission to select additional jurors for service, either as regular jurors or as talesmen, and they shall be summoned without delay, or within such time as the judge may indicate; and interpreting a similar law, this court held this to have been a proper exercise of legislative authority and a sound public policy.
2. In a motion for a new trial only such matters can be availed o I as shall have transpired during the progress of the prosecution, and its refusal because of alleged nullities in the proceedings not adverted to during the trial, nor brought to the attention of the jury, will not be reviewed by this court.
3. The use of the words “ then and there ” in an indictment for perjury are not so sacramental that they shall appear in exact conjunction therein. and being separately employed in the same sentence of the portion of the information charging the taking of the false oath, it will be deemed sufficient.
4. In such an indictment it is not essential that the authority and jurisdiction of the court administering the oath should be expressly averred if they sufficiently appear from the facts set forth; and when the presentation for perjury is in the same court in which the perjury was committed it may take judicial cognizance of its own jurisdiction if the indictment sufficiently sets forth the facts. — Khpoktek,