No. 13,025.

STATE OF LOUISIANA VS. JAMES ROBINSON.

SYLLABUS.

The testimony of third persons as to what accusations the wounded man made against the accused, whilst under arrest and in his presence, is incompetent as hearsay ; same being neither dying declarations, or part of the *res gestae.*

ON APPEAL from the Criminal District Court for the Parish of Orleans. *Moise, J.*

*M. J. Cunningham,* Attorney General, *Robert H. Marr,* District Attorney, and *Jos. E. Generelly,* Assistant District Attorney, for Plaintiff and Appellee.

*Isaac F. Carter* for Defendant and Appellant.

Argued and submitted February 11, 1899.
Opinion handed down February 20, 1899.
Rehearing refused March 20, 1899.

The opinion of the court was delivered by

WATKINS, J. The defendant was indicted, tried and convicted of the murder of one Paul Valentine, and prosecutes an appeal from a death sentence.

He principally relies upon three bills of exceptions which his counsel reserved to the refusal of the trial judge to sustain his objections to the admission in evidence of the declarations of three witnesses who were introduced on behalf of the State.

The three bills being identical, and the three witnesses having testified to the same transaction, it will be necessary to discuss but one of them.

The recitals of the bills are, that the State sought to prove by Officer Felix Vauquelin, and two or three other persons "certain statements " made by the deceased after the defendant had been arrested and " carried to the bedside of the deceased in the custody of the police " force of the city of New Orleans, as to whether or not the prisoner " was the party who shot him."

That to this testimony, defendant's counsel tendered the objection "that the extent of the wound received by the deceased had not been " ascertained, and was not known to be dangerous or mortal; and that " no one had put him on his guard as to the nature and character of " the wound.

"That nothing but a dying declaration, properly executed in the " manner presented by law, could or should be admitted as evidence.

"The proof, according to the coroner's certificate, being to the effect " that the deceased lived three days after the shooting occurred, and " no dying declaration was made, or taken.

"Inasmuch as dying declarations are made in view of the certainty " of death, and the immediate facing of a Supreme Judge who knows " all things, serious objection is raised to putting in evidence any " statement made by him other than a dying declaration, properly " executed in the manner and form required by law; and, especially, " after having been fully advised of impending death."

The trial judge prefaced his assignment of reasons for admitting the testimony objected to over the objections of defendant's counsel, with the following extract from the statement of one witness, viz.:

"Q.—Did Valentine (the deceased) make any statement in this man's (the prisoner's) presence; or did he identify him as the man who shot him?

"A.—He said, 'Jim, you shot me for nothing!'

"Q.—You are certain of that?

"A.—Yes, sir.

"Q.—What did this man, the prisoner, say?

"A.—This man said, 'I never shot you, Paul'; and Paul said, 'Yes, you shot me.'

"Q.—He denied it?

"A.—Yes, sir; he denied it."

He, also, annexes the following extract from the statement from the testimony of another witness which was objected to, viz.:

"Q.—Were you present when this man was brought before Valentine?

"A.—Yes, sir.

"Q.—Did Paul Valentine identify him as the man who shot him?

"A.—Yes, sir.

"Q.—Was Paul Valentine positive about it?

"A.—Yes, sir; he repeated it several times.

"Q.—This prisoner was present at the time?

"A.—Yes, sir; he repeated it two or three times, 'Jim, you shot me.' He (the prisoner) said: 'No, Paul, I didn't; you made a mistake.' Paul said: 'You are the one who shot me.'

"Q.—And he denied it?

"A.—Yes, sir."

The judge states that there were three other persons who were present, and heard that conversation, and that all of them made their statements over the objection of defendant's counsel.

He, also, made an extended extract from the testimony of the defendant as a witness in his own favor, and concludes his reasons, which are very brief, with this observation, viz.:

"The evidence was not offered as a dying declaration; nor was it an attempt to prove by silence, an acquiescence in statements made in his presence while under arrest. It was a conversation between the deceased and the prisoner; a charge and a denial, being its entirety."

The objection to this testimony is, that the statements of the State's witnesses is hearsay, the purport of same being a reputed recital of statements made by the deceased in their presence.

The testimony was not admissible as the dying declaration of the deceased, because he was not, at the time, in *articulo mortis*.

He lived three days after the shooting occurred and was not advised, at the time, that death was pending or inevitable, and, hence, the sanctity of an oath can not attach to it.

The judge corectly held that this evidence was not offered as a dying declaration.

Its introduction is not attempted to be defended on the ground that it was part of the *res gestae*, because that would have been manifestly incorrect, as neither of the witnesses were present, or heard or saw any part of the transaction.

The proposition of the judge is, that the testimony of those police officers was the mere recital of a conversation which occurred between the deceased and the accused in their presence.

Evidently, the repetition by a witness of the statement of another, is hearsay. He merely repeats what the other said in his hearing. And it is by this kind of evidence that it is proposed to prove the identity of the defendant as the assailant of Paul Valentine, in order to fasten the guilt of his homicide upon him.

This is all the more manifest when we consider the fact that the defendant is stated to have stoutly denied the accusation of Valentine in the course of the interview. For it was most certainly not the purpose of the State in introducing these witnesses, to prove the defendant's denial of Valentine's accusation.

This occurrence immediately succeeded the arrest of the defendant, who was found at his own house soon after the shooting of Valentine took place, and only one block distant therefrom.

The shooting took place at a late hour of a dark night, and therefore the question of identity was an important, and possibly a difficult one to prove.

On this state of facts, the question is, whether the testimony was admissible.

We do not think it was.

There can be no doubt of the correctness of the proposition, that statements made by an *accused* person in the course of a conversation between him and the party he is charged to have assailed, is competent testimony, and that proof of such statements may be admitted *against* him as a confession; but we are aware of no rule, that will allow the introduction of parol testimony of third persons, to establish the fact that the party *assailed made accusations against the accused* in the course of that conversation, which may be used as evidence against him.

And this case well illustrates the correctness and propriety of rejecting such testimony, because the defendant was charged with murder and is under a sentence of death; and the fact that the party as-

sailed has since died, and could not give his own evidence, can not justify an alteration of the rule.

This testimony must be regarded as that of Paul Valentine; and if he were living and had been put on the stand as a witness for the State, he certainly could not have been permitted to relate what *accusations he made against the accused, as proof* of his identity.

In State vs. Diskin, 34 Ann. 919, it was distinctly held by our immediate predecessors, that the admission as evidence to be considered by the jury, of the statement of the deceased made in the presence of the accused, but not as a dying declaration, was illegal and vitiated the verdict.

In that case the court, speaking through Mr. Justice Fenner as its organ, said:

"The evidence was to the following effect: After the accused was " arrested on this charge, and while in custody, he was conveyed to " the bedside of John Driscoll, the man killed, who was then lying " wounded at the Charity Hospital. A brother of the wounded man " was, also, present, who was a corporal of the police. The wounded " man said to the prisoner, 'Myles, you hit me and shot me for noth- " ing; own up.' Whereupon, Corporal Driscoll immediately said to " the prisoner, 'be quiet, keep still.'"

Upon this state of facts, the court made the following observation, viz.:

"It is not pretended that the declarations of the wounded man were " made under a sense of impending dissolution. They were admitted " solely on the ground that they were made in the presence of the ac- " cused and to establish his implied admission of the truth thereof, " because of his silence and failure to deny.

"Implied admissions from tacit acquiescence of the defendant in " the statements of others made in his presence, only result, when the " circumstances are such, as afford him an opportunity to act or speak, " and would naturally call for some action or reply from a person sim- " ilarly situated. Mere silence, while a party is held in custody under " a criminal charge, affords no inference whatever of acquiescence in " statements of others made in his presence. He has the undoubted " right to keep silence as to the crime with which he is charged, and is " not called upon to reply to or contradict such statements.

"Under such circumstances, it is held that the statements so made

FIFTY-FIRST ANNUAL REPORTS, 1899. 699·

State ex rel. National Broadway Bank vs. City.

" are not admissible *against* the prisoner, because they do not even
" tend to support the hypothesis of acquiescence.

"Commonwealth vs. McDermott, 129 Mass., 440.

"Commonwealth vs. Kinney, 12 Metcalf, 235.

"Commonwealth vs. Walker, 13 Allen, 570.

"Bob vs. State, 32 Ala. 560.

"Wharton's Crim. Law, Sec. 626."

The facts of that case are quite similar to those of the instant case,
and the principle announced is of unquestionable correctness.

But, for a much stronger reason, should the rule there stated be-
applied in this case, because the statements of third persons were ad-
mitted *as evidence* for the purpose of showing what the wounded man
*said to the defendant* whilst he was under arrest and in his presence.

This statement was used as *positive, affirmative* evidence against
the defendant; and, notwithstanding he did not remain silent, but
made an earnest and vigorous protest against the accusations of the·
wounded man—not once only, but repeatedly, and in the presence and
hearing of several witnesses.

Our conviction is clear, and quite decided, that the testimony of
those several witnesses was incompetent and inadmissible, and was·
erroneously permitted by the trial judge, to be heard by the jury; and
that the overruling of the objections of defendant's counsel thereto,.
was and is reversible error.

It is therefore ordered and decreed, that the verdict of the jury, and
the sentence and judgment thereon based be set aside and annulled;
and it is further ordered and decreed, that the cause be reinstated
and remanded to the court below for a new trial in accordance with·
law, and the views herein expressed.