platform. We have not found that there was the negligence charged.

[3] Contributory negligence must be evident, or in doubtful cases the judgment appealed from will not be reversed. Ferringer v. Crowley, 122 La. 441, 47 South. 763; Buechner v. City, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455.

No exemplary damages were allowed, nor fee of attorney.

We affirm the judgment.

---

(60 South. 16.)

No. 19,467.

STATE v. CONRADI.

(Nov. 18, 1912.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 1091*)—BILL OF EXCEPTIONS—ALLOWANCE.

Where, in a criminal case, the defendant relies for the proper presentation to this court of points of law reserved by him upon the recitals in his bill of exception, to the effect that the evidence adduced tended to prove certain facts, the trial judge, if he intends to deny, in toto, the verity of such recitals should so express himself; but for him to say in general terms that the recitals are "not entirely correct and some of the parts thereof set forth certain facts not introduced in evidence in the case" is neither to deny nor admit any specific averment of the bill, and to leave this court of necessity to accept them all as true, since we have no means of distinguishing between them, and no reason for rejecting any one of them which is not denied or questioned.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2803, 2815, 2816, 2818, 2819, 2823, 2828–2833, 2843, 2931–2933, 2943; Dec. Dig. § 1091.*]

2. THREATS (§ 8*)—SENDING THREATENING LETTER—CONSTRUCTION.

Where in a letter which serves as the basis for a prosecution under Act No. 110 of 1908, the language, charged as conveying a threat, within the meaning of that statute, appears, upon its face and when considered in connection with evidence adduced as to the relations which subsisted between the sender and the recipient and as to the surrounding circumstances, to be susceptible of more than one interpretation, the trial judge should charge the jury with reference to the case as thus presented, and especially that in case of doubt as to the correct interpretation of such language the accused is entitled to the benefit of the interpretation most consonant with the theory of a lawful purpose on his part and of his innocence of the offense charged.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 10, 33; Dec. Dig. § 8.*]

3. THREATS (§ 1*)—INSTITUTION OF CIVIL PROCEEDINGS—STATUTES.

A threat to institute a civil proceeding for the recovery of money claimed as due does not fall within the meaning of Act No. 110 of 1908; but a threat to do the things, or any of them, mentioned in that statute, with intent to extort money, whether claimed as due or not, does fall within its meaning.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

4. THREATS (§ 1*)—WARNING—INSTRUCTIONS.

Where, in a letter which serves as the basis of a prosecution under Act No. 110 of 1908, the language charged as conveying a threat within the meaning of the statute is susceptible of the construction, that it was intended as a warning against what another person might do, rather than as a threat of what the writer intended to do, the jury should be instructed that there is a difference between such warning and the threat contemplated by the statute.

[Ed. Note.—For other cases, see Threats, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

5. CRIMINAL LAW (§ 789*)—INSTRUCTIONS—REASONABLE DOUBT.

The charge to a jury: "If you are satisfied and convinced from the evidence of the guilt of the accused beyond a reasonable doubt, your duty is to find the accused guilty as charged; and, on the other hand, if you are satisfied and convinced beyond a reasonable doubt that the accused is not guilty of the offense charged against him, it is your duty, as well, to say so by your verdict, and acquit him"—implies, on the one hand, that the burden is upon the state in order to obtain a conviction to establish the guilt of the accused beyond a reasonable doubt, and, upon the other hand, that the burden is upon the defendant, in order to obtain an acquittal, to establish his innocence, beyond a reasonable doubt, which is, to say the least, confusing and objectionable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1904–1922, 1960, 1967; Dec. Dig. § 789.*]

Appeal from Judicial District Court, Parish of Jefferson; Prentice E. Edrington, Judge.

Joseph Conradi was convicted of sending a threatening letter to another, and he appeals. Reversed and remanded.

See, also, 130 La. 701, 58 South. 515.

Girault Farrar, of New Orleans, for appellant. R. G. Pleasant, Atty. Gen., and L. H. Marrero, Jr., Dist. Atty., of New Orleans (G. A. Gondran, of Donaldsonville, of counsel), for the State.

MONROE, J. Defendant has appealed from a conviction and sentence under a bill of information which charges that he—

"did willfully * * * send and cause to be * * * received by Rev. Theophile Stenmans a certain letter, * * * written in the German language, the wording of which did express and was adapted to imply a threat to impute to the said * * * Stenmans disgrace, faults, and failings by threatening to charge the said * * * Stenmans with being a party to, and permitting, the commission of general acts of immorality in his house, and did threaten to make known and expose the same, with the felonious intent to cause the said * * * Stenmans to become subjected to public scandal, * * * and impair his good name, * * * with the felonious * * * intent to extort from the said * * * Stenmans money and acquittance, release, and immunity from criminal prosecution resulting from the obtaining of money by the said Joseph Conradi from the said * * * Stenmans under false pretenses by means of the padding of the pay rolls of the workmen employed in the construction of the new St. Joseph Catholic Church, in Gretna, La., constructed by the said Joseph Conradi as architect and superintendent, the padding of said pay rolls consisting in the placing of the names of Joseph Sissung and Tom Smith upon the pay rolls by Joseph Conradi as having received $3 per day, when, as a matter of fact, the said parties actually received from the said Joseph Conradi $2 per day, which said letter * * * was * * * in the figures, to wit."

And then follows what purports to be an English translation of the letter thus referred to, which reads:

"Rev. T. Stenmans: Who sits in glass houses, let him not throw stones. Book of Wisdom. After you have offended grievously, yesterday, Mr. Urban, I cannot blame him for thinking of revenge. I am convinced that Mr. Urban did not commit willingly any fraud. Members of your congregation notified him some time ago of the morality, or rather immorality, of your house and they are ready to prove this as also I have convinced myself. If you are willing to avoid unnecessary scandal and notoriety apologize and this, at once. Personally, I am bound to declare that your action is equal to a common fraud. If you do not settle this question to-day, you may have very soon sufficient time to be sorry for it. My demand is the paying of my work, and the refusal or retaining of it, was taught us in our school as a sin crying to Heaven. If I do not hear from you up to ten o'clock you will have to bear the consequences.

"Respectfully, Joseph Conradi.

"Every day you keep me here will cost you a sum of money. Mind this. The next meeting will prove that I had a right to collect the two dollars from Tom and ——."

Upon the charge as thus formulated, defendant was convicted by a jury of 12 (9 concurring and 3 dissenting), and was sentenced to imprisonment at hard labor for one year, and the payment of a fine of $1,000. His appeal to this court rests upon five bills of exception and an assignment of errors. The bills were reserved (1) to the overruling of a motion to quash the information; (2) to the action of the court in ordering that a plea of "not guilty" be entered on behalf of defendant upon his refusal to plead; (3) to the admission of evidence in support of the charge, as made; (4) to the refusal of the court to give certain requested instructions to the jury and to the giving of other instructions; (5) to the overruling of a motion in arrest of judgment.

1. The ground upon which defendant appears mainly to rely as supporting the bills 1, 2, and 3 is that the letter set out in the information does not contain a threat constituting an offense under the laws of this state. The law relied on by the state is to be found in Act 110 of 1908, § 1, and reads as follows (omitting so much as is inapplicable to the case), to wit:

"That, if any person shall knowingly send or deliver or cause to be sent or delivered or shall cause to be received by another, any letter * * * threatening to accuse him, * * * or to cause him * * * to be accused of any crime, offense or misdemeanor, or to charge him * * * with any fault, infirmity, or failing, or to publish or make known his * * * faults, misfortunes or infirmities or failings, * * * or to injure or impair his * * * good name, reputation or credit, * * * or to, in any manner, cause him * * * to become subjected or liable to any public scandal or public ridicule, or to subject him * * * to any scandalous notoriety, or shall threaten to kill, maim,

wound, murder, kidnap or subject him * * * to bodily harm of any kind, with intent to extort money, goods, chattels, or any promise or obligations for the payment of money or the transfer or delivery of any money or other valuable thing whatsoever or any release, benefit, advantage, or immunity, * * * such person or persons, or any person or persons aiding, advising and abetting such person or persons in the matters and things above set forth, upon conviction, shall be imprisoned at hard labor," etc.

The bill of information charges the offense denounced by the statute as having been committed in the sending and delivery of the letter which is set out in verification of the charge. Whether the letter is properly interpreted by the bill, and actually contains such threat, was a question for the jury, in order to determine which evidence was admissible, and was admitted, as to the relations which subsisted between the writer and the addressee and as to the circumstances under which the letter was written, but the effect of such evidence was a matter to be determined after and apart from the determination of the question presented by the motion to quash, which motion was properly overruled. And the same reasoning applies to the rulings which are made the subjects of the bills 2 and 3, since they rest upon the assertion that the bill charges no offense known to the law.

2. Bill No. 4 contains the recitals (stating them in substance) that there was evidence tending to show as follows, to wit:

That Rev. Father Theophile Stenmans was the priest in charge of a congregation in Gretna, and that defendant, as architect and builder, was superintendent of construction and contractor for the erection of a church for said congregation; that, after the completion and delivery of the building, a dispute arose between defendant and the building committee, of which the priest was a member, as to the settlement of their accounts; that defendant asserted that the congregation owed him a balance exceeding $350, and that the statement of account, as furnished by the priest, was erroneous, in that it contained errors in addition and items charged in triplicate, and that defendant proposed by way of compromise to accept $350 in full of his demands, if paid in cash; that defendant appealed to the most reverend, the archbishop of the diocese, who wrote to the priest, advising him to pay at once; that the building committee asserted that defendant, whose pay rolls were kept by one Urban as superintendent for defendant, assumed the responsibility for the acts of said Urban in that connection, and that said rolls "had been padded in the amounts set down therein for wages paid to one Tom Smith and Joseph Sissung," laborers employed by defendant, in the sum of $3 each per day, when the same should have been $2 each per day; that defendant claimed "that the extra $1 paid to Sissung represented car fare and ferry charges paid out by him in sending said man to New Orleans on errands for copper to be used on said church building"; that defendant had visited the priest 15 or 20 times per day, demanding a satisfactory settlement; that he had written, and caused to be sent by special delivery, the letter, in the German language, set out in the information, and that the priest had received it, and, without opening, had laid it before the building committee, by which it was opened in the presence of the priest, who thereupon translated it into English, in the presence and hearing of the committee, and that the matter was then laid before the district attorney, upon whose advice the priest made an affidavit upon which defendant was arrested, whereupon the district attorney filed an information against defendant, charging him with a violation of Act 110 of 1908.

The bill further recites that, before the argument of the case had begun, counsel for defendant presented to the court certain special instructions (in writing), 11 in num-

ber, and requested that they be given to the jury; and the instructions (save the one numbered 6, which is said to have been made the subject of another bill) are set forth at length. The bill, however, recites that instructions Nos. 2 and 4 were given as requested, and there are some others which, though reproduced in the bill, are not discussed in the brief, and we shall confine our attention to those which, not having been given, are now insisted upon, to wit:

"(1) There is a plain distinction in the English language and in the law between a threat and a warning. A threat is defined to be 'a declaration of an intention to inflict pain, punishment, loss, injury, disgrace or scandal upon another.'

"A warning is defined to be 'caution or advice against danger or against faults or evil practices which incur or bring danger.'

"If the jury find from the letter set out in the information that the statements therein did not amount to, or do not or were not intended to be, a threat, as therein charged, but were merely a warning of consequences not intended or meant to be brought about by defendant, directly or indirectly, then you should find the defendant not guilty.

\*     \*     \*     \*     \*     \*

"(3) To extort means to deprive a man illegally and unlawfully of that which he is not obligated or required by law to yield or give up. To extort money presupposes that the money demanded is not legally due, and that the person who attempts to extort it knows that the same is not due, or has good reason to believe that the same is not due. It is impossible to extort money which is really due or which the person demanding it honestly believes is due to him. Threats of personal violence are unlawful in and of themselves—whether intended to extort money or to claim that which is really due to him. In the case of threats of violence the mere threat, if made in earnest and intended to put a person in fear or in danger, is illegal and unjustifiable. There are no threats of personal violence involved in this case and are not charged in the information.

\*     \*     \*     \*     \*     \*

"(5) A threat made to extort money or property must refer to a certain definite sum of money, well known to the parties or well understood by both of them, or to a certain definite thing of value well known to or easily identified by the party threatened. A threat must be a declaration of a certain, definite, well known, or declared, wrong or wrongful act, which the party threatening declares or implies that he will do or cause to be done or

bring about directly or indirectly, to the injury of the party threatened. A vague and uncertain threat which does not declare or set forth or plainly imply what the party threatening will do, or cause to be done, directly or indirectly, to the injury of the other party, amounts, in law, to no threat at all.

\*     \*     \*     \*     \*     \*

"(10) In the interpretation of a threatening letter charged to have been sent or delivered, with intent to extort money, property, or immunity, if there be a reasonable doubt as to the intent or purpose of the defendant in causing or procuring said letter to be delivered to the prosecuting witness, the jury must adopt the interpretation most favorable to the defendant, and must give the defendant the benefit of any reasonable doubt arising as to the proper interpretation of said letter, and if two interpretations of said letter be fairly or legally possible from the terms thereof and the evidence in the case, then the one most favorable to defendant and most consonant with his innocence should be adopted, and in such case the prisoner must be acquitted.

"(11) In considering the language of the statute which applies to this case (Act No. 110 of 1908), there must be read into the statute, by necessary intendment or implication, the rule of reason in relation to the threats covered by said statute; and a justifiable threat is not covered by the meaning of said statute; for example, a threat to bring a civil suit, if the demand is not complied with, is a justifiable threat, and, if the jury find that such a threat is the kind of threat expressed or implied in said letter, then the same is not penal, and the prisoner at the bar has committed no crime, and must be acquitted."

The bill further recites that, after the court had delivered its general charge and before the jury had retired, counsel for defendant excepted to certain portions of said charge and took his bill of exception thereto, and the portions referred to are set forth.

[1] The statement of the court attached to this bill reads as follows:

"Per Curiam: The evidence that counsel attempts to reproduce in these number of objections in one bill of exceptions is not entirely correct, and some parts thereof set forth certain facts not introduced in evidence in the case. As the facts in criminal cases are not considered by the Supreme Court, this court will not discuss the evidence as set out in this bill. The court is of opinion that the special charges requested and refused were either covered by the general charge or were not correct propositions of law or were comments upon, and referred to, the facts of the case. Counsel did

not except to any particular portion of the charge of the court to the jury, as set out in this bill, but stated that he excepted to the charge of the court."

The general charge, as given by the court, appears in the transcript, and reads as follows:

"Gentlemen of the jury, the prisoner at the bar is charged with having committed the crime of blackmail. Blackmail, as defined by our statutes, is to be found in Act 110 of 1908, and reads as follows: [Here reads the statute.] This act creates the offense of blackmail. So, when a letter containing threats, as stated in the statute which I have just read to you, a letter threatening to accuse a person of immorality and of the commission of immoral acts, accompanied by threats to make such accusation public, so as to injure and impair his good name and reputation, and subject him to public scandal and notoriety or extort from him a promise to release and grant him immunity from a charge of wrongful acts, with the felonious intent to extort money, whether due or not, those acts constitute 'blackmail.' For a creditor to say to his debtor that, if he could not get his money due him in one way, he would get it in another, 'that he could shoot it out,' such a threat to extort money constitutes blackmail. State v. Logan et al., 104 La. 760, 29 South. 336. The punishment for the commission of this offense is that, upon conviction, the accused shall be imprisoned at hard labor for not less than 1 year nor more than 20 years, and shall be fined in a sum not exceeding $2,000. I charge you that, in order to convict the accused in this case of the crime of blackmail, you must be satisfied of his guilt beyond a reasonable doubt; but, if you are not so satisfied, he is entitled to an acquittal. All persons accused of crime are presumed by law to be innocent until they are proved guilty. The consequence of this rule of law is that the accused is not required to prove his innocence, but must rest upon the presumption in his favor until it is overcome by positive and affirmative proof. It is therefore incumbent on the state to establish to your satisfaction beyond a reasonable doubt every essential ingredient necessary to constitute the guilt of the prisoner of the crime charged.

"The reasonable doubt which you must have is not a mere doubt, because everything relating to human affairs and depending upon oral evidence is open to some possible or imaginary doubt.

"It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the mind in that condition that you cannot say that you feel an abiding conviction to a moral certainty of the truth of the charge. A reasonable doubt is therefore not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a sensible doubt, such as you could give good reason for. This reasonable doubt must arise from the evidence, and you must not go outside of the evidence in search of a doubt on which to acquit the accused.

"The guilt of the accused must be proven to your satisfaction, and beyond a reasonable doubt to the exclusion of every other hypothesis.

"But, should you entertain this reasonable doubt, the benefit of same must be given to the accused, and in that case you must acquit.

"In every criminal case the defendant's guilt must be made out of evidence sufficiently strong to exclude any reasonable supposition of his innocence.

"An information filed by the district attorney originates the prosecution, but is not evidence of the guilt of the accused. This information simply informs the court of the commission of a crime or offense, and you are to pass on his guilt or innocence according to the law and the evidence heard at the trial of the case, and you are the judges of the law and the facts.

"You may believe or disbelieve any of the witnesses, you may weigh, sift, prune, trim, and hew their evidence as you will, but in weighing the same you must do so in the same scale of justice, and that evidence is to be considered in accordance with the principles and laws of evidence.

"An accused has the right to take the stand and testify in his own case and testify in his own behalf. He may refrain from so doing, if he chooses to do so. Because he has not done so, the jury is not to consider that circumstance as militating against him. If he does testify in his own case, his testimony must be considered as that of any other witnesses.

"I charge you if from the evidence you are satisfied beyond a reasonable doubt that a letter was written and sent to the Reverend Theophile Stenmans by the accused, and that said letter did not contain any threats calculated to expose said Stenmans to public scandal, ridicule, and scandalous notoriety, and that said threats were not made with willful and felonious intent to extort from said Stenmans money, whether due or not, or immunity of some kind, you must acquit.

"But, on the other hand, if from the evidence you are satisfied beyond a reasonable doubt that a letter was sent to the Reverend Theophile Stenmans by the accused, and that said letter contains threats calculated to expose said Stenmans to public scandal and ridicule and scandalous notoriety, and that said threats were made with the willful and felonious intent to extort from said Stenmans money, whether due nor not, or immunity of some kind, you must find the accused guilty. I charge you that you are to consider this case solely upon the evidence adduced at the trial and upon the law as given you by the court. As to the facts in this case you are the sole judges, but, as to the law, it is safer for you to take it as given you by the court. I charge you, if you are satisfied

and convinced from the evidence of the guilt of the accused beyond a reasonable doubt, your duty is to find the accused guilty as charged; and, on the other hand, if you are satisfied and convinced beyond a reasonable doubt that the accused is not guilty of the offense charged against him, it is your duty as well to say so by your verdict and acquit him.

"In a case of this kind, nine of you concurring may bring into court your verdict.

"When you bring in your verdict, let it be dated and signed by your foreman, writing the word 'Foreman' under it.

"When you will have agreed upon a verdict, whatever it be, bring it into court."

The requested charges which the bill of exception states were given read:

"(2) Not every threat is made penal by the statute of the state of Louisiana which governs this case, but only such particular threats as are, by the statute, made criminal and which are proven beyond a reasonable doubt to have been made with the particular criminal intent denounced by the said statute (Act No. 110 of 1908).

*          *          *          *          *          *

"(4) To attempt to extort immunity from prosecution means to attempt to compel a person against whom the threat is made to forbear to lay before the lawful authorities,—the justice of the peace, the district attorney, or the grand jury,—the facts tending to show that the person who makes the threats is guilty of a certain and definite crime, defined and denounced by law. A threat to extort immunity from prosecution presupposes that the person who makes the threat knows or has good reason to believe that he is guilty of some certain and definite crime, defined and denounced by law, and also that the person against whom 'the threat is made knows or believes that such person making the threat is guilty of said crime."

The propositions which defendant was seeking to establish as constituting his defense were (in substance) that, in so far as his letter refers to any charge of immorality against the prosecuting witness, the intent and purport of the language used was merely to warn the prosecuting witness that Urban had heard something on that subject, and, in revenge for the charge reflecting on him of "padding" the rolls, was in a frame of mind to make public what he had heard, unless an amend should be made to him speedily with respect to that charge, and

131 LA.—21

that, as to defendant himself, he regarded the acts of the prosecuting witness in the business between them as equal to a common swindle, and, unless the prosecuting witness by the next day settled his demand for wages, he (the prosecuting witness) would have reason to regret it, and that every day that he kept defendant (who lived in St. Louis) here would cost him a sum of money —meaning that he (defendant) would resort to some civil action which would be troublesome and expensive to the prosecuting witness. To understand those propositions and correctly to interpret the language of the letter, the jury, as we have said, heard evidence as to the relations of the parties and the circumstances under which the language was used, and, if the recitals of the bill are to be accepted as true, that evidence "tended" to establish facts which, taken in connection with said language, presented to the jury the questions, whether the letter conveyed merely a warning, as to what Urban might do, and a threat, on the part of defendant, to resort to a civil action, or a threat of what defendant intended to do, both as to the publication of what had been said about the immorality at the house of the prosecuting witness and about the collection of his claim for wages. It is evident that, for the purposes of his bill of exception, defendant was interested in showing to this court that the evidence adduced "tended" to establish the facts stated in the recitals of the bill, and it is equally evident that he ought not to be deprived of the right to make that showing by a statement per curiam, which neither admits nor denies any statement made in the recitals. If our learned brother of the district court had intended to deny in toto the verity of those recitals, he would, no doubt, have so expressed himself, but to say, as he has done, that "the evidence that counsel attempts

to reproduce in these numbers of objections in one bill of exceptions, is not entirely correct and some parts thereof set forth certain facts not introduced in evidence in the case," is neither to admit nor deny any specific averment of the bill, and to leave this court of necessity to accept them all as true, since it has no means of distinguishing between them, and has no reason for rejecting any one of them which is not denied or questioned. State v. Wright, 48 La. Ann. 1531, 21 South. 160; State v. Robinson, 52 La. Ann. 696, 25 South. 380; State v. Guy, 107 La. 575, 31 South. 1012; State v. Riggio, 124 La. 617, 50 South. 600.

Proceeding, then, upon the assumption that the evidence adduced "tended" to establish the facts as stated in the bill, and considering, in connection therewith, the language of the letter upon which the prosecution is based, we are of opinion that, whilst the charge of the trial judge in the main correctly states the law generally applicable to cases such as this, it fails to take into account, and to instruct the jury concerning the peculiar features of this case, as to which, we think, more particular instructions should have been given.

[2, 3] Thus, the difference between a warning as to what another person might do, and a threat as to what the writer of a letter, such as that here in question, is charged with having expressed the intention of doing, was a matter of serious importance, to which the attention of the jury should have been called. Defendant was also entitled to have the jury instructed that if they found that the language of the letter was fairly susceptible of two interpretations, and the question of the correct interpretation was one of doubt, it was their duty to give defendant the benefit of the interpretation most consonant with the theory of a lawful purpose on his part and of his innocence of the offense charged. We are further of opinion that in reading the law to the jury the court should have explained more particularly than was done in the general charge that a threat to institute a civil action for the recovery of money claimed, as due, does not fall within its meaning. The special instructions, Nos. 1, 10, and 11, should, therefore, have been given as requested. As to the requested charge No. 3 (to the effect that "it is impossible to extort money which is really due or which the person demanding it honestly believes to be due him," etc.), we find no reason for changing our opinion, as expressed in State v. Logan, 104 La. 760, 29 South. 336, where it was held that, under Act 63 of 1884 (section 1 of which is amended and re-enacted by Act 110 of 1908), a person attempting to enforce the payment of money by threats within the meaning of the statute was guilty of the offense denounced by it, whether the money demanded was due him or not.

[4] In the requested charge counsel for defendant says:

"Threats of personal violence are unlawful in and of themselves, whether intended to extort money or to claim that which is really due. In the case of threats of violence, the mere threat, if made in earnest and intended to put a person in fear or danger, is illegal and unjustifiable."

But a threat of violence, whether to extort money or otherwise, is an offense only because the law makes it so; and, as it happens, the same sentence, in the same section of the same law, which, in this state, makes such threat an offense, also makes the threat charged against the defendant an offense; the penalty in both cases being prescribed by the same language. The requested charge No. 3 was therefore properly refused. We are of the same opinion as the requested charge No. 5, since the law says nothing about a "definite sum" of money, or "a certain, definite thing of value, well known to,

or easily identified by, the party threatened," though, probably, an indictment charging a threat with intent to extort immunity would be bad, unless there was something to show what was meant by the word "immunity." With regard to the exception taken to the charge as given, the judge states that "counsel did not except to any particular portion of the charge, * * * but stated that he excepted to the charge of the court."

[5] The bill, therefore, brings up no objection to the general charge that we are able to consider. We must, however, notice as an error patent on the face of the charge itself the following in the closing paragraph (save those referring to merely formal matters), to wit:

"I charge you, if you are satisfied and convinced from the evidence of the guilt of the accused, beyond a reasonable doubt, your duty is to find the accused guilty as charged; and, on the other hand, if you are satisfied and convinced, beyond a reasonable doubt, that the accused is not guilty of the offense charged against him, it is your duty as well to say so by your verdict, and acquit him."

The inference from the charge, as thus given, would seem to be that, on the one hand, the burden rests upon the state, in order to secure a conviction, to establish the guilt of the accused beyond a reasonable doubt, and, on the other hand, that the burden rests on the defendant, in order to secure an acquittal, to establish his innocence beyond a reasonable doubt, which is to say the least confusing and objectionable. The bill to the overruling of the motion in arrest of judgment presents nothing which has not been considered. Nor does the assignment of errors, which seems to have been filed rather late.

The verdict and sentence appealed from are avoided and reversed and the case is remanded, to be proceeded with according to law, and to the views expressed in this opinion.