Appeal from Second Justice's Court, Parish of Washington; Murray J. Schilling, Judge.

Action by Willie McElveen against Henry A. Goings. Judgment for defendant, and plaintiff appeals. Reversed.

Herman Eldridge Gayer, for appellant. Albert Gallatin Breeland, for appellee.

PROVOSTY, J. Article 244 of the Constitution, exempts from seizure "the homestead consisting of lands, buildings and appurtenances, whether rural or urban; also two work horses, one wagon or cart, one yoke of oxen,

[1] 115 La. 26.

two cows and calves, 25 head of hogs or 1,000 pounds of bacon or its equivalent in pork, whether these exempted objects be attached to a homestead or not, and on a farm the necessary quantity of corn and fodder for the current year, and the necessary farming implements, to the value of $2,000."

The seizing creditor in this case seized plaintiff's mule, and contends that mules not being horses the Constitution does not exempt them from seizure. He is mistaken, the term "work horses" includes mules. Ray v. Hayes, Sheriff, 28 La. Ann. 641. The Constitution manifestly so intends. And in order so to hold it is not necessary to have recourse to what is known as a liberal construction, but simply to read the statute intelligently. Courts "will not apply the rule of strict construction with such technicality as to defeat the purpose of ascertaining the true meaning and intent of the statute." 26 A. & E. E. of Law, p. 659. Thus in Goldsmith v. State, 1 Head 156, the Supreme Court of Tennessee held that a criminal statute against horse racing was violated by the running of a mule race.

The judgment appealed from is set aside and the injunction herein is perpetuated at the cost of defendants in both courts.

---

(41 South. 229.)

No. 16,092.

STATE v. CRUMP.

(May 21, 1906.)

1. HOMICIDE — EVIDENCE — DYING DECLARATIONS—APPEAL.

The defendant was indicted for manslaughter, found guilty and recommended to the mercy of the court. The objection of the defendant to the admissibility of evidence was general, and did not point out the inadmissible words of the declaration. Grounds not urged below will not be considered on appeal.

2. SAME—EVIDENCE—MALICE.

The fact that the testimony for the state may have gone slightly beyond the crime charged because of the issues as presented by de-

fendant will not afford ground sufficient to set aside the verdict. If there was malice on the part of defendant it only added to the gravity of the offense.

3. SAME—SELF-DEFENSE.

The testimony of defendant admitted to prove that plea, i. e., self-defense, justified the ruling which permitted the introduction of testimony by the state to which the defendant objected.

4. SAME—TRESPASS VEL NON.

The defendant sought to prove he had not committed a trespass, that he was on a peaceable mission at the time of the homicide. The testimony offered by the State was properly admitted.

5. SAME — TESTIMONY AS TO CONVERSATION HEARD.

The witness heard the conversation which was pertinent to the issue. The testimony was admissible in corroboration of other testimony.

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Bienville; James Edward Moore, Judge.

Charley Crump was convicted of manslaughter, and appeals. Affirmed.

Benjamin Pearce Edwards, Joseph Rush Wimberly, and William Chappelle Barnette, for appellant. Walter Guion, Atty. Gen., and John C. Theus, Dist. Atty. (Lewis Guion, of counsel), for the State.

BREAUX, C. J. The defendant was charged with manslaughter; he was indicted and found "guilty and recommended to the mercy of the court."

From a sentence of five years and a half he prosecutes this appeal.

His grounds of defense are set forth in seven bills of exceptions. In the first bill of exceptions it appears that defendant objected to the verdict on the ground that the court permitted, over defendant's objection, the witness R. P. Watson, father of the deceased, to state, in testifying regarding the dying declaration of his son, facts that were "self-serving declarations, inadmissible and hearsay." The bill of exceptions states said objection: "The defendant through coun-sel objected to the first part of the statement of the witness."

The following is the first part of the dying declaration in question, as testified to by the father of the deceased, quoting:

"When I said that I was sorry that these things were as they were, he said 'yes, but when I married this girl I promised to protect her, and I could not help it under the circumstances.'"

The following is the remainder:

"I didn't see Charlie. When I was shooting he was behind the wall shelter. On my return back into the house he shot me in the back, but when I walked out there he threw his hand on his pistol, but I had mine in my hand and I beat him to it. Lawrence Crump threw his hand on his pistol, but I had mine in my hand and I beat him to it."

Taken as a whole there is nothing in the foregoing in the nature of a self-serving testimony complained of by defendant, for the objections to self-serving declarations are confined to the defendant. Wharton on Criminal Evidence—Self-Serving Declarations.

The testimony as relates to the state could not be self-serving.

In the second place "It was hearsay" said the defendant. This in view of the facts is scarcely an objection; for at best the dying declaration was all hearsay. The defendant did not, in support of the grounds stated, point out the objection he had, nor did he specifically set forth the grounds on which it was inadmissible.

In a case we have before us the dying declaration was "that the dying man had nothing against him," the defendant, and that "he did not know that defendant had anything against him," the dying man. The court said this part of the evidence should have been excluded, if properly pointed out and objected to as illegal. But the objection, said the court, was to the declaration as a whole; although a part of the evidence was inadmissible there was no error in refusing to exclude it. Citing Shorter v. State, 63

Ala. 129; Brown v. State, 52 Ala. 345; Reynolds v. State, 68 Ala. 502.

We are certainly of the opinion that the declaration of the dying man should relate to the circumstances attending the killing, and that under the evidence of a dying declaration inadmissible evidence should not be admitted. But an accused should be held to specifically object to the errors and point out that portion which is inadmissible. The defendant who levels his attack at the dying declaration cannot on appeal successfully urge that the whole charge was illegal because of the illegal portion which he did not point out.

We have said before that under the circumstances here an objection that the dying declaration was hearsay is scarcely an objection which a defendant should make in order to give notice to the court of his ground of defense. Both the irrelevant portion of the declaration and that which was pertinent to the issue were hearsay. Should not the defendant, through counsel have directed the attention to that particular portion which was considered inadmissible?

This brings us to the second bill of exceptions whereby it is shown that the defendant objected to the following question, quoting:

"What disturbance, if any, had been made prior to the killing about Bob Watson's place or Otis Watson's place or along that lane by Chester Crump, Lawrence Crump, or their crowd?"

The judge in permitting this question to be propounded as a part of the bill of exceptions states that the evidence went to sustain the contention of the state that defendant and others were engaged in trespass under aggravating circumstances, and that they had been engaged in disturbance before the house of the Watsons; and that there was reason to anticipate trouble.

The whole issue reduces itself to whether malice, shown in view of the circumstances of this case, vitiated the verdict. We do not consider that it did.

It may be well to state here, as showing the character of the case, that manslaughter sometimes comes near to murder; while the act is not attended with legal malice or depravity, yet under certain circumstances proof of malice will not afford ground for setting aside the lesser charge of manslaughter.

It is well settled, so much so that it is not necessary to cite decisions, that in order to obtain relief on appeal it must appear that the error committed was prejudicial to defendant's cause. Here it is very evident that it was not prejudicial. The defendant has no good ground upon which to stand in urging that the verdict should not have been affirmed because it appeared by the testimony that there was malice; and that he had been actuated by malice.

Now as to the self-defense which defendant sought to prove: An attacking party cannot, while attacking, very well be held to have acted in self-defense (a defense to which defendant claims to have been entitled).

There was question as to whether defendant had acted in self-defense. The state, in order to meet the defendant on this ground, introduced evidence to show that he had committed aggravated trespass on the day of the homicide and on days before the homicide. These aggravated acts of trespass went to show that he and not the deceased was the aggressor, and that he could not, in view of the facts, sustain the plea of self-defense.

But defendant next reiterates that in order to prove manslaughter it was only necessary to show that the killing was unlawful and in heat of blood. This is quite true; but there are circumstances which may render it necessary to let in certain proof although it may have a tendency to show that the accused was actuated by malice.

There had been difficulties between the parties. The accused and those with him sought to prove that they intended to pass peaceably through the Watson inclosure, in which Charles Watson was killed. This the

prosecuting officer sought to meet by offering in evidence testimony which was admitted to show the bad faith and to contradict the defendant on other gounds. The testimony was properly admitted to enable the prosecuting officer to meet the defense on its own ground.

We glean from the testimony that there was no good feeling toward one another, to wit, the father and his two sons—one now deceased—on the one hand, and defendant and those who were with him at the time of the occurrence on the other.

Defendant and those with him, we infer, sought to prove that they were not trespassers; that they had received no notice not to pass within the inclosure of the Watsons; and that defendant had acted in self-defense.

While the district judge deemed it proper to permit the prosecuting officer to introduce evidence to the contrary.

Considering the issue as presented, it may be that part of the testimony showed some malice on the part of defendant, and yet it does not follow that the verdict, under the circumstances was null and illegal. Although in the course of the trial the issue may have been somewhat enlarged it does not for that reason appear that the defendant was prejudiced in his defense. The defendant, as well as the prosecutor, is responsible, for expanding the issues slightly beyond the indictment.

This brings us to another ground of defense: defendant's objection was that the prosecuting officer was permitted on cross-examination to examine the accused regarding matters that had not been testified to when he was examined in chief. The prosecuting officer, in answer, said that it was no new matter; that the accused, while testifying in his own behalf, had raised the question which the prosecuting officer sought to meet.

The trial judge in his statement (made part of the bill of exceptions) sets forth that the defendant as a witness on his direct examination testified that he was peaceably passing through the premises of the Watsons without intending thereby to commit a trespass, and fully believing that he was not committing a trespass, and that there was no objection to his passing. The judge's further statement is that if the state could prove that defendant had promised the owner (Watson, Senior) that if he (Watson) would put up a gate and posts he would not enter the premises, the testimony would then be a direct contradiction of his statement as a witness that he had had no notice to pass through the premises.

From the foregoing it is evident that the questions raised by the testimony did not relate to facts not sworn to on the direct examination, but the reverse.

We pass from this objection to the bill of exceptions reserved to the ruling of the judge in accordance with which he permitted D. W. Adams to testify regarding a conversation between the accused and R. P. Watson, father of the deceased, a short time before the day the homicide was committed. The purpose was to corroborate the testimony of R. P. Watson regarding a certain conversation.

The objection of defendant was that Adams had not heard all the conversation. The trial judge informed us by his statement in the bill of exceptions that the witness Adams heard all that was said after coming up to where the parties were conversing and that he heard all that was said regarding the point at issue.

The facts being as stated it was manifest that the objection had not merit.

See upon the subject, State v. Spillers, 105 La. 165, 29 South. 480.

The last of the bills of exceptions taken shows that the court refused to permit a witness to testify that R. P. Watson had made a statement to the effect that the notice posted by him notifying persons not to pass through his premises did not apply to the accused.

The trial judge informed us that he refused to permit the defendant to prove this statement of Watson because it did not appear that it was ever communicated to the defendant or had in any way come to his knowledge; that not communicated as it was, it was irrelevant and mere hearsay. We agree with the trial judge if the testimony had been admitted it would have enabled the defendant to impeach the witness, Watson, although no foundation had been laid to enable the defendant to impeach the testimony of this witness.

It is well settled, in order to impeach a witness, there must be a proper foundation laid.

We have taken up the different grounds of defense; our examination has resulted in the conviction that the defendant has no legal ground upon which to obtain relief before this court. We find no error.

The judgment is affirmed.