MONROE, C. J.
Defendant, who was convicted under an indictment for the embezzlement, on June 1, 1914, of funds belonging to litigants before the court of which he was clerk, and received by him in his capacity of clerk and ex officio recorder and notary, prosecutes this appeal, and relies upon two bills of exception (others reserved on the trial having been abandoned). From one of the bills it appears:
That Oscar Baughman, who was cashier of the Farmerville State Bank, during part of defendant’s incumbency of the offices mentioned “was asked if the defendant, A. J. Hammons, had not received, as clerk of court, the sum of $242 from Edward Everett, receiver of the Starnes Lumber Company, Limited, under order of this court, which sum the said A. J. Hammons had deposited, as a trust fund, in the *855 Farmerville State Bank, and if the said A. J. Hammons had not withdrawn all of said money in October, 1913”; to which defendant objected, on the ground “that the said testimony was irrelevant and immaterial, and intended to prejudice the minds of the jury against, defendant, and was not connected with, nor grew out of, any of the facts of the present charge, and was too remote from the standpoint of time;” which objections were overruled by the court, and the witness answered the question by saying that “during the spring of 1913 A. J. Hammons, as clerk of court, deposited a check from Edw. Everett, receiver of the Starnes Lumber Company, Limited, and that in October, 1913, this money was drawn out by A. J. Hammons in cash, and that since that time there has been no deposit in the trust account of A. J. Hammons, Clerk.”
The bill was reserved to the overruling of the objection, for which the trial judge assigns the following reasons, to wit:
“The defense, being already outlined by the testimony received, was that during the first of the demands against the defendant he did not distribute the funds because of confusion in the judgment and loss of a plan of distribution, and later he was prevented by having been robbed. The only contested issue before the jury was one of intent, the real cause of the delay, whether he had a lawful excuse for delay, or whether he was converting, trust funds in his hands by virtue of his office to his own use. I believe the evidence admissible. The state offered to prove other eases of a similar nature that I ruled out, because the law did not make it his duty to receive and disburse the funds. The distinction I drew may have been too fine. In all cases where the guilt of the party depends upon the intent, purpose, or design with which an act is done, or guilty knowledge thereof, I understand it to be a rule that collateral facts may be examined into in which defendant bore a part. The state proposed to follow this evidence with other acts and declarations of the defendant as to this fund inquired about of the witness, so as to show a fraudulent design on the part of the defendant to wrongfully convert all of the trust funds in his hands as clerk of court to his own use. The time of the two transactions was not too remote.”
The other bill shows that H. G. Fields, a witness for the state, was asked by the district attorney — ■
“if he had not learned, some time in May or June, 1914, that Mr. Hammons had withdrawn the trust funds of Starnes Lumber Company formerly deposited by him in the Farmerville State Bank, and if he had not, as one of the attorneys interested in the receivership of the Starnes Lumber Company, gone to Mr. Hammons and told him that the money should stay in. the bank, and that Mr. Hammons had replied that he had loaned it out on interest, and the attorney told the defendant he had no right to do so.”
To which counsel for defendant objected. The objection was overruled, and the bill reserved; the grounds of objection by counsel and reasons assigned by the court being about the same as in the matter of the preceding bill.
We find no error in the ruling complained of. Defendant, by virtue of his office, frequently came into possession of the money of others, to be held by him until, in due course of legal proceedings, the rightful owner or owners being ascertained, he should be required to make delivery to them. He was charged in the instant case with failing to-make such delivery. The facts, that the obligation had arisen and that he failed to discharge it appear to be undisputed, but, by way of showing that the failure arose from no evil intent — no appropriation of, or purpose to appropriate, the money to his own. use — he offered the explanation that at first, the judgment which imposed the obligation to pay it over was not clear to his mind, and that afterwards (presumably when he came-to understand the judgment, or it was made clear to him) he had been robbed of the money. It is impossible that one man or twelve-should know what may have been the understanding, or intention of another at a particular time and with regard to a particular matter, but, if juries in criminal prosecutions were concluded as to that question by the statements of the defendants, there-would be. few convictions in proportion to the crimes committed. And that, whilst true with regard to most offenses, is especially true with regard to embezzlement. On the other hand, the actual misappropriation of money or the failure to account for money held in trust, which has the appearance of embezzlement, may result from a variety of *857 ■circumstances,- such as erroneous bookkeeping, misunderstanding or failure to understand an instruction, or an obligation as to the disposition of the money, or its loss by ■accident or robbery, etc., neither of which involves criminal intent. The most generally accepted doctrine as to the relevancy and admissibility of evidence to prove intent is variously stated as follows:
“Evidence of other crimes similar to that charged is relevant and admissible when .it •shows or tends to show a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves the particular intent is competent, and cannot be excluded because it proves an independent crime. Where the question is whether a certain act was intentional or accidental, evidence to show that the accused intentionally committed similar acts before is relevant to show the intent.” 12 Oyc. 408.
“Where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused and that the crime charged was not the result of accident or inadvertence. This rule is often applied when the crime charged is one of a series of swindles or other crimes involving a fraudulent intent, for the purpose of showing this intent.” Id. 411.
“The general principles governing the admissibility of evidence in other criminal prosecutions g;overn in prosecutions for embezzlement; and evidence of any facts or circumstances tending to throw light upon the issue of guilt or innocence is ordinarily admissible. As in other cases, however, irrelevant, incompetent, or immaterial evidence is not admissible. Since, from its nature, intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent, on the one hand, or, on the other hand, to show the bona fides of the accused.” 15 Cyc. 528, 529.
“In cases of embezzlement the very confidence and trust reposed in the person accused furnish the most potent means for its accomplishment and effectual concealment, so that guilt can generally be established only by reasonable inferences drawn from the general course of conduct of such officer, agent, clerk, •or servant with respect to the subject-matter of his trust, and from all the facts and’ circumstances surrounding his acts which tend to throw light upon or illustrate their nature. Upon this principle evidence of other offenses or transactions similar to those charged in the indictment is admissible for the purpose of showing a criminal intent on the part of the defendant.” 10 A. & E. Enc. of Law (2d Ed.) 103S, citing a number of cases from England, Alabama, Arizona, California, Georgia, Massachusetts, Minnesota, and Texas, and, among them (by way of illustration), the following, in which the courts are said to have ruled as stated below, to wit:
Reg. v. Balls, L. R. I. C. C. 328, 40 L. J. M. C. 148:
“In a prosecution for embezzlement in failing, on three occasions, to account for moneys received, it was held that the prosecution might show" other instances of defaults in order to prove that, those for which the defendant was on trial were the result of intentional fraud, and not of mere accident.”
Reeve v. State, 95 Ala. 31, 11 South. 158:
“And on a prosecution of a bank officer for embezzlement it was held that the state might introduce evidence of other transactions of a similar character by the defendant and other officers, which, though entered on\ the hooks as loans to the various officers, amounted to a misappropriation of the bank’s funds and caused its failure. * * *
“A single act, charged in the indictment,” said the court, “standing alone, might be susceptible of inferences of honesty of purpose or of a mere mistake, which, viewed in the light of a long course of conduct, and of repeated acts of a similar nature intimately and directly connected with the particular accusation, would be utterly inconsistent with such inferences; and the fraudulent intent with which the particular act was done demonstrated beyond all reasonable doubt” — citing U. S. v. Lee (C. G.) 12 Fed. 816; Stanley v. State, 88 Ala. 154, 7 South. 273; Hawes v. State, 88 Ala. 37, 7 South. 302; Ker v. People, 110 Ill. 627, 51 Am. Rep. 706; Jackson v. State, 76 Ga. 561.
In Elliott on Evidence, vol. 4, p. 2967 (under the title “Embezzlement,” and subtitle “Intent”), we find the language.above quoted from the text of 10 A. & E. Enc. of Law, and also the quotation above given from Reeve v. State, to which the learned author adds:
“Evidence that the accused has committed offenses similar to that in question is often admitted on the question of intent or motive.”
Dr. ’Wharton’s view of the question at issue is shown by the following excerpts from his work on Criminal Evidence (10th Ed. vol. 1, pp. 59, 146, 157, and volume 2, p. 1657), to wit:
“Certain exceptions exist, however, to the rule just stated [i. e.j that evidence of collateral offenses is inadmissible]. These exceptions fall under the following general divisions: (1) Relevancy as part of res geste; * * * (3) relevancy to prove scienter or guilty knowledge; *859 (4) relevancy to prove intent; (5) relevancy to prove motive; * * * (8) relevancy to prove special defenses. * ♦ *
“When the object is to show system, subsequent as well as prior, collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system collateral and isolated offenses are admissible from which system may be inferred; * * *
“Another defense frequently raised is accident or mistake. Now, accident or mistake, considered with regard to crime, is the exact reverse of intent, the absence of one being indubitable proof of the ’presence of the other. As a consequence of the nature of this defense, evidence that goes to prove intent on the part of the accused is admissible in rebuttal, notwithstanding the fact that it i>roves another crime. * * *
“As we have already seen, other offenses are inadmissible when offered for the purpose of proving the crime charged, or to show that the defendant would be likely to commit the crime with which he is charged. But the evidence of other offenses is admissible to show motive, and, where relevant for this purpose, the admissibility is not affected by the fact that such evidence may prove other crimes.”
In Abbott’s Trial Briefs, Criminal Causes, p. 514, § 236, it is said:
“When criminal intent or guilty knowledge in respect of the act is an element in the offense charged, evidence of other acts of the accused manifesting that intent or knowledge is competent, notwithstanding it may establish the commission of another offense not charged.”
See, also, as bearing generally upon the question of the admissibility of “evidence of other crimes in criminal case,” the note to People v. Molineux, 62 L. R. A. 193 (168 N. Y. 264, 61 N. E. 286), and as bearing particularly upon the question of the admissibility of such evidence to prove intent in a prosecution for embezzlement, paragraphs of said note on page 226.
The question in this case being whether defendant had, with fraudulent intent, misappropriated a particular fund which had come into his hands as a public officer, it would clearly have been relevant for him to c show that he had never during the period' of his service misappropriated any other-such fund, and, had evidence to that effect been offered, it would, no doubt, have had its effect with the jury in their consideration of his statement that he was robbed, in this instance; for, if he had dealt honestly with every other fund that had come into his possession, the jury would have been called on to find some reason or motive for his having made an exception with respect to the particular fund in question.
On the other hand, if the" state had proved that every other fund and the whole mass of the funds that had come into his hands had been embezzled, with the possible exception of the particular fund here in question, the jury would have been obliged to consider the question of the exception so made, or said to have been made, from a different point of view. In either case evidence as to the manner in which, in general, he dealt with the money which came into his official hands was relevant and important, as tending to show his rule, system, or course of conduct with reference thereto, and his intention as to that part of it which he was charged with, and has been convicted of, embezzling. His duty, as we take it, was to have deposited all such moneys in bank to the credit of his official account, and to have drawn it out only upon proper authority. Whether he did so or not, such moneys constituted in his hands, theoretically, if not actually, unless it was otherwise specially ordered or agreed, a single fund, in and by the depletion of which the owners and beneficiaries of the different amounts of which the fund was constituted were equally interested and affected, from which it follows that the misappropriation of part of the fund would bear a direct relation to the subsequent misappropriation of another part or of the entire balance. However that may be, and, though it should be conceded that each particular amount going into the hands of the *861 clerk should be regarded as a separate fund, i bearing no relation to moneys already in his hands, or to amounts thereaftér received, we are of opinion that in the case here presented the misappropriation of the one such amount in October was neither too remote from or unrelated to the similar alleged misappropriation in the following June to make it irrelevant in his prosecution, and hence that the testimony referred to in the bills now under consideration was properly admitted. The verdict and sentence appealed from are therefore
Affirmed.
O’NIELL, J., dissents, and hands down reasons. See 69 South. 279.