(109 So. 505)

No. 27938.

### STATE v. COLE.

(May 31, 1926. Rehearing Denied June 28, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬤⟳1091(11).**

Reference in bills of exceptions to pages of separate volume for testimony taken by accused's stenographer is not compliance with Act No. 113 of 1896.

**2. Criminal law ⬤⟳1111(3)—Judge's per curiam is controlling when facts are not taken down by clerk or official stenographer, and properly certified copy attached to bill of exception.**

When facts on which bill of exception is reserved are not taken down by clerk or official stenographer, and properly certified copy is not attached to bill, trial judge's per curiam is controlling.

**3. Jury ⬤⟳72(½).**

Where, after drawing 50 talesmen, but before calling them for examination, it was discovered that juror on regular panel had not been called through accidentally misplacing name slip, court properly ordered his name placed in box and drawn in regular manner, and challenge for cause and motion to quash venire were properly overruled.

**4. Jury ⬤⟳110(12).**

Defendant voluntarily accepting jurors after challenge for cause was overruled, *held* to indicate waiver of complaint that name was not drawn before exhaustion of venire was announced.

**5. Criminal law ⬤⟳1165(1).**

To set aside conviction, error must be so grave as to induce belief that acquittal might otherwise have resulted.

**6. Jury ⬤⟳72(1).**

Tales jurors may be drawn before regular venire is exhausted.

**7. Banks and banking ⬤⟳85(1).**

Indictment for receiving deposit with knowledge of bank's insolvency *held* to sufficiently charge offense of "assenting to receipt of deposit," in violation of Act No. 108 of 1884.

**8. Indictment and information ⬤⟳110(2).**

Indictment for statutory crime is sufficient, if it follows substantially language of statute.

**9. Criminal law ⬤⟳478(1)—State bank examiner of long experience held qualified to testify whether bank was insolvent or failing when cashier received deposit (Act No. 108 of 1884).**

State bank examiner, with 20 years' experience in banking, bank examining, and accounting, *held* qualified to give expert opinion whether bank was insolvent or in failing condition when cashier received deposit, in alleged violation of Act No. 108 of 1884.

**10. Criminal law ⬤⟳1134(3).**

Objection to question withdrawn and not answered will not be considered.

**11. Criminal law ⊕⟿472—Experienced banker's testimony as to when bank is in failing condition held admissible.**

Testimony of experienced, practical banker without knowledge of defendant's bank as to when bank is in failing condition *held* admissible in trial for receiving deposit with knowledge of bank's insolvency.

**12. Criminal law ⊕⟿485(1).**

Experts may express opinion on hypothetical question, if not based on mere abstract questions of science or speculative data.

**13. Criminal law ⊕⟿1169(1).**

In trial for receiving deposit with knowledge of bank's insolvency, admission of testimony that defendant had checking account in bank on day it closed *held* not reversible error; such fact being immaterial.

**14. Criminal law ⊕⟿683(1)—Testimony as to amount defendant withdrew from bank during time covered by his questions to witness as to withdrawals held admissible in rebuttal.**

In trial for receiving deposit with knowledge of bank's insolvency, testimony as to how much defendant withdrew from bank during period covered by defendant's interrogatories to witness concerning such matter *held* admissible in rebuttal.

**15. Banks and banking ⊕⟿85(2)—Bank examiner's testimony as to conversation with defendant concerning entry in bank's books of sum charged to have been embezzled held admissible in trial for receiving deposit with knowledge of bank's insolvency.**

In trial for receiving deposit with knowledge of bank's insolvency, bank examiner's testimony as to conversation with defendant concerning entry in books of amount, for embezzlement of which defendant had been indicted, *held* admissible to show his knowledge of bank's failing condition, and rebut defense as to cause thereof.

**16. Criminal law ⊕⟿338(1).**

Evidence tending to controvert defense or show scienter or knowledge necessary to constitute act a crime or tort is admissible.

**17. Criminal law ⊕⟿370, 371(1, 12), 372(1).**

Proof rebutting inference of accident, or showing system, motive, guilty knowledge, criminal intent, etc., is admissible, though tending to prove other crimes.

**18. Banks and banking ⊕⟿85(2)—Overdrawn account of defendant's firm held admissible in trial for receiving deposit with knowledge of bank's insolvency.**

In trial for receiving deposit with knowledge of bank's insolvency, overdrawn account of firm, of which defendant was member, *held* admissible to show knowledge of bank's condition, and rebut contention that it was caused by a slow run.

**19. Criminal law ⊕⟿1111(3).**

In trial for receiving deposit with knowledge of bank's insolvency, objection to any statement by bank examiner to defendant *held* without merit, in view of court's per curiam, stating that he was told to and did testify only to what defendant said.

**20. Criminal law ⊕⟿1120(1).**

Admission of testimony, not taken down by clerk and attached to bill of exception, or given or referred to in court's per curiam, cannot be reviewed.

**21. Banks and banking ⊕⟿85(2)—Examiner's testimony as to finding note among assets covering amount alleged to have been embezzled by defendant held admissible in trial for receiving deposit with knowledge of insolvency.**

In trial for receiving deposit with knowledge of bank's insolvency, bank examiner's testimony as to whether he found note among bank's assets covering amount alleged to have been embezzled by defendant *held* admissible to show knowledge of bank's failing condition and rebut defense as to cause.

**22. Criminal law ⊕⟿1111(3).**

Trial judge's statement that testimony not taken down and made part of bill of exception was rebuttal evidence must be accepted.

**23. Banks and banking ⊕⟿85(2).**

Proof of value of bank's assets is admissible in trial for receiving deposit with knowledge of bank's insolvency.

**24. Banks and banking ⊕⟿85(2).**

In trial for receiving deposit with knowledge of bank's insolvency, appraiser's testimony as to amount of assets lost *held* admissible, though appraisal was made ten days after bank closed.

**25. Criminal law ⊕⟿478(1).**

Question to bank director as to estimated loss of assets at time of appraisal by him and other directors *held* not objectionable as calling for opinion of witness not qualified as expert.

**26. Criminal law ⊕⟿448(1).**

In proper cases, opinion evidence by nonexperts is admissible when relevant to issues.

27. **Criminal law ☞451(1)—Ordinary observer may state natural inference from things observed or impressions made by connected facts impractical to detail.**

Ordinary observer may state natural inference from observed conditions or occurrences or impressions made on his mind by number of connected facts, which it is impractical to place before jury in detail.

28. **Criminal law ☞730(9).**

In trial for receiving deposit with knowledge of bank's insolvency, any harm in district attorney's remark that state did not claim that defendant borrowed money from bank, but that he took it, *held* cured by charge to disregard remark.

29. **Criminal law ☞1144(10).**

Except in extreme cases, presumption is that prejudicial effect of improper remarks of counsel was removed by instructions to disregard them.

30. **Criminal law ☞1169(2).**

Admission of testimony principally cumulative of testimony already given is not error.

31. **Banks and banking ☞85(2)—Testimony as to nonpayment of checks covered by witness' balance held admissible in trial for receiving deposit with knowledge of insolvency.**

In trial for receiving deposit with knowledge of bank's insolvency, testimony as to nonpayment of witness' checks by bank, though he had ample balance, *held* admissible to show scienter or guilty knowledge of bank's condition.

32. **Witnesses ☞277(4)—Cross-examination of defendant as to matter gone into on direct examination held proper.**

Cross-examination of defendant, in trial for receiving deposit with knowledge of bank's insolvency, as to his failure to account for proceeds of note collected by him *held* proper as concerning identical matter gone into on his direct examination.

33. **Banks and banking ☞85(2)—Bank examiner's testimony as to banking requirements, and defendant's noncompliance therewith, held admissible to rebut testimony that it was unnecessary to keep certain books.**

In trial for receiving deposit with knowledge of bank's insolvency, bank examiner's testimony as to certain banking requirements and extent of defendant's failure to comply therewith *held* admissible to rebut defendant's testimony that it was unnecessary to keep certain books and make certain entries.

34. **Criminal law ☞1170½(2)—Overruling objection to question as to banking requirements and defendant's noncompliance therewith held not prejudicial, in view of answer.**

In trial for receiving deposit with knowledge of bank's insolvency, overruling objection to questions asked bank examiner as to certain banking requirements and extent of defendant's noncompliance therewith *held* not prejudicial error, in view of answer that banking department required no special kind of bookkeeping.

35. **Criminal law ☞1037(2)—Remarks of state's counsel that jury were not trying ladies who sat by accused, but accused, who was responsible for ruin of community, held not ground for reversal, in view of per curiam and absence of request for instruction to disregard them.**

In trial for receiving deposit with knowledge of bank's insolvency, remarks of state's counsel in argument that jury were not trying ladies who sat by accused, but were trying accused, who alone was responsible for his situation and ruin of community, *held* not ground for reversal, where per curiam stated that they were mere conclusions warranted by evidence and that court charged jury not to consider counsel's statements, and defendant made no request for instruction to disregard them.

36. **Criminal law ☞1171(1).**

Jury's verdict should not be set aside for improper argument of counsel, except for gross misconduct, or in extreme cases.

37. **Criminal law ☞726.**

Prosecuting attorney's comments, merely directing jury's attention to sworn testimony in answer to argument of defendant's counsel, are not improper.

38. **Criminal law ☞935(1).**

Motion for new trial, merely alleging that verdict is contrary to law and evidence, presents nothing for review.

39. **Criminal law ☞1092(4).**

Bills of exceptions, not offered for filing until ten days after sentence and appeal, cannot be considered, in absence of application for, or reservation of, any right to file them thereafter.

40. **Criminal law ☞1083.**

Granting of appeal divests trial court of jurisdiction to exercise judicial discretion, but, within reasonable bounds, before granting appeal, it may reserve right to perform ministerial duties necessary to have record show what took place.

**41. Criminal law ☞1092(4).**

Accused obtaining appeal before bills of exceptions are signed, or without being given time in which to present them, waives or abandons them.

Appeal from Second Judicial District Court, Parish of Webster; John S. Richardson, Judge.

G. W. Cole was convicted of receiving a deposit with knowledge that the bank of which he was vice president and cashier was in failing circumstances and insolvent, and he appeals. Affirmed.

L. K. Watkins, Drew & Drew, and J. F. McInnis, all of Minden, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and W. D. Goff, Dist. Atty., of Arcadia (Thomas W. Robertson and E. R. Schowalter, Asst. Attys. Gen., of counsel), for the State.

BRUNOT, J. The accused was active president and cashier of the Bank of Cotton Valley. He was indicted by the grand jury, tried and convicted, and sentenced for a violation of Act No. 108 of 1884. From the verdict and sentence he appealed.

There are twenty-seven bills of exception in the record.

Bills Nos. 5, 8, 17, 19, 20, 21, 22, 23, and 24 will be considered separately, but the other bills may be grouped in the following order: First, Nos. 1, 2, and 3; second, Nos. 4 and 25; third, Nos. 6, 7, and 18; fourth, Nos. 9, 10, 11, 12, 13, and 14; fifth, Nos. 15 and 16; sixth, Nos. 26 and 27.

Bill No. 1 was reserved to the overruling of a motion to quash the venire. Bill No. 2 was reserved to an order of court directing that the name of juror F. W. Willis be placed in the venire box. Bill No. 3 was reserved to the overruling of defendant's challenge of juror F. W. Willis for cause.

[1, 2] It may be noted here that all of the testimony given during the trial of the case was stenographically taken by an employee of

161 LA.—27

the accused. The stenographic notes were transcribed and filed in the record in a separate volume. None of the bills which were reserved by counsel for the accused show what testimony was taken at the time the objectionable ruling was made, except by reference to the page or pages of that volume. This is not a compliance with the provisions of Act No. 113 of 1896. When the facts upon which the bill is reserved are not taken down by the clerk or official stenographer of the court, and a properly certified copy thereof is not attached to the bill of exception, the rule is that the per curiam of the trial judge is controlling as to the facts stated therein. State v. Carmouche, 141 La. 326, 75 So. 68.

[3, 4] The per curiam of the trial judge to bill No. 1 is repeated, by reference, in the per curiam to bills Nos. 2 and 3. The judge says:

"On the trial of the case, late in the afternoon, it appearing that the venire had been exhausted, the court ordered the tales jury box brought into court and 50 names drawn therefrom, after which court adjourned. The next morning defendant contended that there had been only 29 jurors drawn and names placed in the jury envelope and box by the jury commission instead of 30, and filed a motion to quash the venire, On checking the matter up, it was found that juror F. W. Willis had not been called. On examining the jury box and the envelope which had remained in the custody of the court and proper officers, it was found that the slip on which this name was written had either stuck in the envelope when they were originally emptied into the jury box or had been inadvertently put back in the envelope. On the discovery of this, before any tales jurors were called, the court ordered the slip placed in the jury box from the envelope and drawn. Mr. Willis had been regularly drawn by the jury commission, his name placed on a slip, and placed in the envelope as required by law, was summoned and answered the summons. No fraud, injury, or wrong was alleged or shown, and, the slip being in the envelope, the court ordered that it be placed in the box and drawn in order that the original venire might be exhausted before any tales jurors were called for examination as to their qualifications. He was accepted by the defendant, although defendant had not exhausted his peremptory challenges."

The jury venire was, in every respect, regular and legal, and therefore the motion to quash the venire was correctly overruled.

The sheriff accidentally overlooked drawing the slip upon which the name of juror Willis was written, and announced to the court that the venire was exhausted. The court thereupon ordered the drawing of 50 tales jurors to complete the jury panel, and adjourned court.

[5] When the court assembled on the following morning, the sheriff's error was discovered, and before further proceedings the court ordered the overlooked slip placed in the jury box and drawn therefrom in the regular manner. This juror qualified as a competent juror to try the case, but was challenged, for cause, by the defendant, because of the incident just related. The challenge was overruled, and thereupon defendant voluntarily accepted the juror. There is no showing that defendant was injured or that his defenses were affected by the rulings complained of. The acceptance of the juror, under the circumstances, is, at least, indicative of a waiver of defendant's complaint. We do not think the court erred in issuing the order excepted to, or in overruling the challenge of juror Willis for cause. Our predecessors have said that—

"It is not every error in the rulings of a judge during the progress of the trial that will justify the setting aside of the verdict. To warrant such action on the part of the court it must be so grave an error as to induce the belief that but for its commission a verdict favorable to the accused might have been returned." State v. Hill, 39 La. Ann. 927, 3 So. 117.

[6] This court has repeatedly held that tales jurors may be drawn before the regular venire is exhausted. State v. Moncla, 39 La. Ann. 868, 2 So. 814; State v. Green, 43 La. Ann. 402, 9 So. 42; State v. Watkins, 106 La. 380, 31 So. 10; State v. Major, 132 La. 201, 61 So. 202.

For the reasons stated, bills 1, 2, and 3 are without merit.

[7] Bills Nos. 4 and 25 are based upon defendant's attack upon the indictment. Bill No. 25 was reserved to the overruling of a motion to quash the indictment, and bill No. 4 was reserved to the overruling of an objection to any testimony on the part of the state under the alleged defective indictment. The indictment is attacked upon the ground that it "does not set out any crime known to the laws of the state of Louisiana." The indictment charges that—

"G. W. Cole, late of the parish of Webster, on the 13th day of April in the year of our Lord one thousand, nine hundred and twenty-five at and in the parish, district, and state aforesaid, did then and there, while active vice president and cashier of the Bank of Cotton Valley, a banking institution and corporation organized and existing in and under the laws of the state of Louisiana, and domiciled at Cotton Valley, La., willfully, unlawfully, and feloniously receive a deposit from A. J. Hodges Lumber Company, amounting to $95, after he, the said G. W. Cole, well knew and had knowledge of the fact that the said Bank of Cotton Valley was in failing circumstances, and insolvent."

Act 108 of 1884, under which the accused was prosecuted, reads:

"Section 1. That it shall be a crime for any president, director, manager, cashier, or other officer, or owner of any private or public bank or banking institution in the state, to assent to the reception of any deposit, or the creation of any debt by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances.

"Section 2. That any president, director, manager, cashier or other officer, or owner of any public or private bank or banking institution in this state, who shall have been convicted of the crime provided for by section 1 of this act, shall be imprisoned in the state penitentiary, at hard labor, for a time not less than (5) five nor more than (10) ten years, at the discretion of the court, and shall moreover be individually responsible for any such deposit, so received, and any such debt, so created, as is provided for by section 1 of this act."

The objection to the indictment is that it is not drawn in the words of the statute. The indictment charges the accused with receiving a deposit after knowing the bank to be insol-

vent, while the crime denounced by the statute is assenting to the receipt of a deposit under those circumstances. The contention of defendant is that receiving and assenting to the receipt of deposits have a different and distinct meaning. They are not interchangeable terms, and, as the accused is not charged in the exact words of the statute, the indictment is fatally defective. The per curiam of the judge to this bill follows:

"The bill of indictment, together with the motion for a bill of particulars and the answers of the state thereto taken together, charged a crime under Act 108 of 1884. While the exact words of the statute may not have been used, the words that were used are more extensive than and include the wording of the statute, and, as the court understands the law, the use of the identical words of the statute is not sacramental, but use of the words that convey the meaning of the statute is sufficient."

[8] It is our opinion that, while the words of the indictment charging the defendant with receiving a deposit after knowledge of the fact that the bank was then insolvent are a departure from the words of the statute, they are substantially the same or sufficiently equivalent in meaning to charge the crime denounced by the statute under which the accused was prosecuted.

"An indictment for a statutory crime is sufficient if it follows substantially the language of the statute." State v. Menard, 150 La. 324, 90 So. 665.

The motion to quash the indictment was correctly overruled, and, therefore, the bill reserved to the overruling of counsel's objection to the introduction of any testimony on the part of the state is without merit.

Bill No. 5 recites that—

"The district attorney asked witness R. Flaherty if he made a deposit in the Bank of Cotton Valley on April 13, 1925, and that said question was objected to by counsel for defendant for the reason that the deposit slip was the best evidence, * * * and the court overruled the objection."

The court in the per curiam to the bill says:

"There was no objection to the question asked Mr. Flaherty about making a deposit in the Bank of Cotton Valley on April 13th. A deposit slip was presented to Mr. Flaherty, and it was identified by him as being the identical deposit slip given him by Mr. Cole. This slip was signed by Mr. Cole at the time, and delivered to witness by Mr. Cole, who, he testified, received the deposit. The state then offered the deposit slip in evidence, and the same was filed. Even if an objection had been made as stated in the bill of exception that the deposit slip was the best evidence, no injury was done, as the deposit slip was identified, the signature of G. W. Cole thereto proved, and the slip itself offered in evidence."

No testimony was taken down by the clerk and attached to this bill. Therefore Act No. 113 of 1896 was not complied with. For reasons which we have fully stated in our consideration of bills 1, 2, and 3, the facts stated in the court's per curiam are controlling. Defendant contends in his brief that the deposit slip offered in evidence was a copy of the original and was therefore not the best evidence until loss of the original was proven. The trial judge says that the deposit slip offered in evidence was identified by the witness as the identical deposit slip given to him by Mr. Cole. It is not necessary to again repeat our reasons for accepting the judge's statement of fact as being correct.

[9] Bills Nos. 6, 7, and 18. The first of these bills was reserved to defendant's objection to Lewis Buckner testifying to the solvency or insolvency, or failing condition, of the Bank of Cotton Valley on April 13, 1925, the date the crime is charged in the indictment to have been committed. The court, in the per curiam to the bill, says:

'The court first sustained the objection until it was shown that Mr. Lewis Buckner was an expert in the banking business. It was shown that he was a bank examiner appointed by the banking commissioner, and had been engaged in the banking and bank examining and accounting business for more than 20 years. The court then stated that the witness could testify as to the conditions he found, not what conclusions he came to. The witness then stated facts as found by him as to the condition of the bank and observed the instructions of the court," etc.

The court's ruling was conservative. The witness was qualified as an expert, and he should have been permitted to give his expert opinion upon the matter inquired about. This court so held in State v. Mathis, 106 La. 263, 30 So. 834; State v. Perry, 149 La. 1065, 90 So. 406; and in State v. Christian, 160 La. 525, 107 So. 393, decided February 1st, 1926.

[10] Bill No. 7 was reserved to the alleged overruling of an objection to the same witness testifying to the condition of the Bank of Cotton Valley on January 26, 1925. The judge's per curiam definitely disposes of the bill. It is as follows: -

"The question was asked in substantially the form above given. After discussion by counsel, the district attorney withdrew the question altogether, and it was not answered. The court did not overrule the objection, or even pass on it, because the district attorney withdrew the question before the court ruled on the objection."

[11, 12] Bill 18 was reserved to the overruling of an objection to a hypothetical question propounded to witness Cummings and calling for an expression of the opinion of the witness as to when a bank is in a failing condition. The court in its per curiam says:

"After counsel for state had qualified this witness by showing many years of experience as a practical banker and his knowledge of the banking business, the above question was asked as a hypothetical proposition. It was not claimed that Mr. Cummings knew anything about this bank as claimed in the objection. Counsel for defendant did not question his competency as an expert banker of both experience in, and knowledge of, the banking business."

It is a well-recognized rule of law that experts may be permitted to express an opinion upon a hypothetical question, provided the opinion is not upon mere abstract questions of science or mere speculative data. In many jurisdictions it is held that the hypothetical question should embrace the facts of the case. In a few the contrary rule is adopted, while in others counsel are permitted to assume the facts in accordance with their theory of them. In State v. Ayles, 120 La. 661, 45 So. 540, this court said:

"The trial court has much discretion in * * * permitting hypothetical questions to be propounded to an expert witness for the purpose of eliciting from him his opinion as to the sanity of the accused at the time when the homicide with which he was charged was committed; this discretion covering both the form and the substances of the question."

[13] While witness Lewis Buckner was on the stand, the district attorney asked the witness if the defendant had a checking account against the Bank of Cotton Valley the day the bank closed. Counsel for defendant objected to the question, the objection was overruled, and Bill No. 8 was reserved to the ruling. In the per curiam to the bill the judge says:

"The question above referred to was asked and objection was made which was overruled by the court. The witness answered: 'Yes, sir; the books show a checking account there.' The district attorney then asked this question: 'What was the condition of his account at the time the bank failed?' This question was objected to, and the objection was sustained."

Whether or not defendant had a checking account against the bank when it failed is of no consequence. The evidence which was admitted could not harm or prejudice the accused, and, even if wrongfully admitted, it is not reversible error. State v. Wright, 48 La. Ann. 1525, 21 So. 160; State v. Charles, 108 La. 230, 32 So. 354; State v. Lewis, 112 La. 874, 36 So. 788; State v. Sweeney, 135 La. 566, 65 So. 743.

[14, 15] Bills 9, 10, 12, and 13 were reserved to the overruling of objections to the admissibility of testimony given by witness Buckner. Bill 11 was reserved to the filing of Cole Bros. account with the Bank of Cotton Valley, in evidence, over the objection of counsel; and bill 14 was reserved to testimony elicited by the state, over counsel's objection, from witness R. W. Cole.

Bill No. 9. Witness Buckner was asked the following question:

"During the period from January 26, 1925, to April 13, 1925, covering the period about which you were questioned by Mr. McInnis, as to the withdrawal of deposits, I will ask you to state

how much was withdrawn from the bank's assets by Mr. George W. Cole, and ask that you be allowed to refer to the books, if you choose to do so."

Counsel for defendant objected to the question and the testimony sought to be elicited by it as being immaterial, irrelevant, prejudicial to defendant, covering a time too remote, and for the reason that defendant's counsel had only interrogated the witness as to the withdrawal of deposits between March, 1925, and April 15, 1925. The essential parts of the court's per curiam follow:

"Counsel for the defendant had examined Mr. Buckner with reference to the withdrawal of deposits from January 26 to April 13, 1925, handing him the books of the bank, and he had testified with reference thereto. * * * Then the above question was asked as quoted in the bill of exception. The court overruled the objection, but the witness did not answer it, because another and further objection was made that the books should be first identified, and the court so ruled. The question as asked was never answered by the witness. The court then instructed the witness to only identify the books, which he did making this answer to the court's instruction: 'Yes, sir; this page here, February 14, 1925, gives the withdrawal.' Then the following questions and answers, without objection, followed."

The per curiam quotes the testimony, and concludes as follows:

"This testimony was in rebuttal of the idea and testimony advanced by the defendant that the insolvency and failing condition of the bank was caused by a 'slow run' on the bank by the depositors, and also tended to show knowledge of G. W. Cole, the defendant, concerning the condition of the bank by the withdrawal of its assets by himself."

It appears from the judge's per curiam that the witness was re-examined by the state upon the same subject-matter and in relation to the same period of time covered by the interrogatories of defendant's counsel, and that the testimony elicited was in rebuttal of the evidence brought out by the defendant. It also appears that the witness never answered the question which was objected to and which is made the basis of this bill. The court's ruling is correct.

[16] Bill No. 10. Witness Buckner was asked the following question:

"I will ask you about the entry you have testified to on February 14th, of $6,454.66. Please explain how you learned what that was for, and state the conversation you had with Mr. George W. Cole with reference thereto—I mean with reference to the $6,454.66 that you have already testified about. Please state, if you know, from anything Mr. George W. Cole said, who made the entries on these books, and repeat the conversation between you and Mr. George W. Cole with reference to it, if you can."

Defendant's counsel objected to the question as being "an attempt to go into another case," and as being "immaterial, irrelevant, and prejudicial to the defendant." Counsel attached to this bill an indictment charging that the accused, on February 14, 1925, willfully and feloniously embezzled $6,454.66 of money belonging to the Bank of Cotton Valley.

The court says in the per curiam:

"This question and the answer thereto was admitted for the sole purpose of showing knowledge of G. W. Cole as to the condition of the bank and in rebuttal of his defense that its failing condition was caused by a 'slow run' by depositors in withdrawing deposits."

Evidence which tends to controvert the defense or to show scienter or such knowledge on the part of the accused as is necessary to constitute his act a crime or tort is admissible. Underhill's Crim. Ev. (3d Ed.) § 153, p. 200.

In the case of State v. Morgan, 129 La. 154, 55 So. 747, this court quoted with approval the following:

"The general principle is that all facts affording any reasonable inference as to the act charged are relevant and admissible, * * * including facts showing design, motive, knowledge, or the like, when these matters are in issue or relevant." Wigmore on Evidence, par. 216.

[17] As the court admitted the evidence for limited and clearly admissible purposes, it is

not necessary to seriously consider the objection that the state was attempting to prove other crimes. We may add, however, that there are exceptions to the general rule which counsel invokes, notably when the proof is offered to rebut the inference of accident, or to show system, motive, guilty knowledge, criminal intent, etc. State v. Hammons, 137 La. 854, 69 So. 277; State v. Williams, 111 La. 179, 35 So. 505; State v. Morgan, 129 La. 154, 55 So. 747.

[18] The district attorney offered in evidence the account of Cole Bros. with the Bank of Cotton Valley. The offering was objected to, the court overruled the objection, and counsel for defendant reserved bill No. 11 to the ruling. The offering was objected to as being irrelevant, and prejudicial to the defendant.

The per curiam is as follows:

"The testimony showed that Cole Bros. was a partnership composed of defendant and S. L. Cole. The testimony was admissible to show knowledge of defendant concerning the condition of the bank, and in rebuttal of defendant's contention that the condition of the bank was caused by a 'slow run'; this account showing that this firm was overdrawn more than $1,200 to the knowledge of defendant, and was very material under the defenses urged by defendant."

The reasons given in our consideration of bill No. 10 apply with equal force to this bill.

[19] Bill No. 12 is a lengthy recital. It will serve no purpose to quote it here. The principal objection of defendant is as follows:

"We object to any statement Mr. Buckner might have personally made to Mr. Cole."

The remainder of the objection is not clear, but the substance of it is that counsel objected to the offering of the testimony for any purpose except to prove what money was drawn out of the bank, and by whom it was drawn.

Counsel's first objection is disposed of by the court's per curiam. The court says:

"Counsel is in error in stating that his objection to the witness stating what he (witness) said to Cole was overruled. As a matter of fact, his objection was sustained, and the witness was told by the court to testify only to what Cole said, and the witness observed the ruling of the court."

[20] As the evidence was not taken down by the clerk and attached to the bill, and as the facts testified to are not given or referred to in the court's per curiam, there is nothing further in connection with this bill which we may consider.

[21] Bill 13 was reserved to the overruling of defendant's objection to the following question propounded to witness Lewis Buckner:

"When you took charge of the bank, and made your investigations, did you find any note of any kind among the assets of the bank that would cover this item."

The item referred to was the $6,454.66. The objection upon which this bill is based is the same as that we have disposed of in our consideration of bill No. 10.

[22] Bill No. 14. This bill recites that—

"The district attorney, in examining witness R. M. Cole, asked him about a conversation with George W. Cole relative to this item, $6,454.66, and what Mr. Cole said he did with the money, and what he said he did with the cotton."

Counsel for defendant objected to the question, the objection was overruled, and this bill was reserved to the ruling.

The court's per curiam follows:

"This testimony was admitted as a circumstance as to the solvency or insolvency of the bank and the defendant's knowledge, and it was stated to the jury in open court that the testimony was admitted for that purpose only. It was in rebuttal of defendant's contention that the money was a loan to Cole Bros., and that the condition of the bank was caused by a 'slow run' on it."

Again we say that the testimony was not taken down and made a part of this bill as the law directs. We must therefore accept the trial judge's statement that the evidence objected to was rebuttal evidence, and admissible.

[23-25] Bill No. 15 recites that—

"The district attorney handed to witness R. M. Coyle a document purporting to be an appraisement of part of the assets of the Bank of Cotton Valley, and asked him to sign said document as an appraiser, and what was the estimated loss of the assets of the bank, at the time of said purported appraisement."

The question was objected to for the reason that the appraisement was made on April 23d, or ten days after the bank closed, and because the question called for the opinion of the witness, who had not qualified as an expert.

The judge says in the per curiam:

"The testimony showed that the bank examiner caused an appraisement of the assets to be made by certain directors of the bank according to the provisions of law. Mr. Cole was present when it was made. The witness was a director and one of the appraisers, and testified as to how the appraisement was made, and that it was a correct appraisement and valuation of the assets of the bank. This was also testified to by the other appraisers appointed, and was admitted as evidence on the question of the solvency of the bank vel non."

[26, 27] Bill No. 16 presents the same matter as the bill we are now considering; the only difference being that in one counsel objected to the state proving the accuracy of the appraisement by the appraisers because they were not first qualified as experts, and in the other counsel objected to the document being admitted in evidence. From the per curiams of the court, it appears that the appraisers were directors of the bank. They went through the assets of the bank item by item, and appraised and valued the same as the law directs, and they testified to the correctness of the appraisement. Proof of the value of a bank's assets is admissible in evidence. State v. Hoffman, 120 La. 949, 45 So. 951. The objection that the appraisement of the bank's assets was made ten days after the bank closed, and that the question called for the opinion of a witness who had not qualified as an expert, is untenable. In proper cases, opinion evidence by nonexperts is ad-

missible in evidence in every jurisdiction in this country. The practical conditions under which cases are tried frequently necessitate a relaxation of the general rule excluding opinion evidence. Of course, such evidence can only be received when it is relevant to the issues.

"An ordinary observer is permitted to state a natural inference from observed conditions or occurrences, or the impressions made on his mind by a number of connected facts which it is impractical to place before the jury in detail." 22 C. J. p. 498.

The bank closed on April 13, 1925, and the appraisement and valuation of its assets was made ten days later. There is no suggestion in either of defendant's bills that any of the bank's assets were dissipated, or that their value diminished, or that they were not constantly in the custody and under the control of the bank examiner during that interval. We therefore think this objection of defendant is wholly without merit.

[28] Bill No. 17 was reserved to a remark of the district attorney made in the presence of the jury. The bill grew out of the following incident: Witness Coyle was on cross-examination when counsel for defendant made a statement and asked the witness a question. Counsel used this language:

"And the state has raised quite a kick here, and made quite a point of the fact that Cole borrowed $6,400 from the bank, but you know that that note has been paid in full, and in face of that you say that he was drawing the money out of the bank, and you as a director of that institution had $1,463 there on March 13, 1925, and only $41 at the time it closed. You drew your money out, didn't you?"

The district attorney thereupon interposed and said:

"We object to that on the ground and for the reason that the state is not claiming or contending that Mr. Cole borrowed any money. We claim that he took it."

The remark quoted was excepted to, and the court promptly charged the jury to disregard it. The exact words of the court follow:

"Gentlemen of the jury, you will disregard any statement made by any of the attorneys to any facts, in any way. Only evidence given you by the witnesses should be given attention by you."

The judge's charge to the jury cured any harm done or that otherwise might have resulted from the remark excepted to. State v. Thornton et al., 142 La. 797, 77 So. 634.

[29] "Except in extreme cases, the presumption is that the prejudicial effect on the jury of improper remarks made by counsel for the state is removed by the instructions of the court to the jury to disregard the same." State v. Heidelberg, 120 La. 300, 45 So. 256; State v. Easley, 118 La. 690, 43 So. 279.

[30, 31] Bill No. 19 was reserved to the overruling of an objection to a question asked witness Lewis concerning the issuance of checks, by him, against his checking account in the Bank of Cotton Valley, which were not paid by the bank, although witness had an ample balance in the bank to meet them. The objection is that the testimony is irrelevant and prejudicial to the defendant.

We quote the pertinent part of the court's per curiam:

"In showing the condition of the bank as to solvency and the knowledge of the defendant, president and cashier, of its condition, the state offered testimony showing that several thousand dollars of cash letters had been sent to the bank for payment, and had been held up by Mr. Cole, and not paid, or returned, and this testimony was offered on the same point, to further establish the fact, and to show that the defendant did not have money to pay checks of his depositors, with large balances to their credit."

From the foregoing per curiam, it appears that the testimony excepted to was principally cumulative of testimony that had previously been given in the case. The evidence clearly tended to show scienter or guilty knowledge on the part of the defendant of the bank's condition, and it was admissible for that purpose, if for no other.

[32] Bill No. 20 was reserved to the overruling of an objection to questions asked the defendant, on cross-examination, with reference to the collection of a note for the People's Light Company, by the witness, and his failure to account for the proceeds thereof. The court says:

"Mr. Coleman Lindsey, one of the liquidators, had testified about the People's Light Company note without objection. Counsel for the defendant asked the defendant many questions about it on direct examination, and the questions asked by the state were asked in cross-examination of the witness on the identical matter gone into by defendant's own counsel."

By opening the door, as stated in the per curiam, the inquiry complained of became pertinent and material. State v. Johnson, 41 La. Ann. 1076, 6 So. 802; State v. Ponyier, 36 La. Ann. 572; State v. McFarlain, 42 La. Ann. 803, 8 So. 600; State v. Baker, 43 La. Ann. 1168, 10 So. 256; State v. Baudoin, 115 La. 773, 40 So. 42; State v. Feazell, 116 La. 264, 40 So. 698; State v. Crump, 116 La. 978, 41 So. 229.

[33] Bill No. 21 was reserved to the overruling of counsel's objection to questions asked witness Buckner calling for an explanation of certain banking requirements, and to what extent, if the witness knew, the defendant had failed to comply with those requirements. The judge says:

"This testimony was clearly in rebuttal of defendant's testimony that it was not necessary to keep such books and make such entries."

[34] Further on in the per curiam the judge says that the witness answered the questions favorably to the defendant; his exact words being:

"The banking department requires no special kind of bookkeeping, or that any special system be kept."

We fail to see any merit in this bill.

[35, 36] Bill No. 22 was reserved to a remark made by counsel assisting in the prosecution. Counsel in the argument said to the jury that they were not trying the good ladies who sat by the accused throughout the ordeal, but they were trying the accused, who alone was responsible for his unfortunate situation and for the condition of the communi-

ty that had been blighted and utterly ruined by this disaster.

The substance of the judge's per curiam is that the remarks which were objected to were mere conclusions and deductions of the associate counsel, and were warranted by the evidence in the case; that on several occasions the court charged the jury not to consider any statements of counsel, but only the evidence from the witnesses; and that he repeated this charge in his general charge to the jury.

It does not appear that counsel for defendant made any request of the court to instruct the jury to disregard the remark. In fact, it was admitted, in the argument, that he made no request of the court, but simply noted his objection and reservation of a bill.

Verdicts will not be lightly set aside on account of improper remarks made by the prosecuting attorney. It has been held that the courts are only warranted in doing so in extreme cases. State v. Mitchell, 119 La. 374, 44 So. 132; State v. Robertson, 133 La. 806, 63 So. 363.

It has also been held that, in order to set aside a verdict for misconduct of counsel in argument the misconduct must be gross. State v. Jones, 51 La. Ann. 103, 24 So. 594; State v. Murray, 139 La. 283, 71 So. 510; State v. Accardo, 129 La. 671, 56 So. 631; State v. Romero, 117 La. 1003, 42 So. 482; State v. Johnson, 151 La. 625, 92 So. 139; State v. Thomas, 141 La. 560, 75 So. 241.

For the reasons we have several times given in this opinion, we must accept the trial judge's statement of fact. He says the evidence adduced warranted the conclusions and deductions uttered by counsel. The use of intemperate or indiscreet language by prosecuting officers in the trial of criminal cases is always to be deplored. It must be remembered that courts are sanctuaries of justice, and, like the temples of religious worship, their quiet dignity and orderly procedure should be the first consideration of every citizen. But, however we may condemn indiscretions committed within their portals, the authorities we have cited hold that the verdict of a jury should not be set aside except for gross misconduct or in extreme cases.

[37] Bill No. 23 was reserved to a remark made by the prosecuting officer in his argument. No misconduct is charged in the bill. The objection is that the comment complained of had no place in the case, and was prejudicial to the defendant. The trial judge says that the comments of the prosecuting attorney were made in answer to the argument of defendant's counsel that they were within the record, and they merely directed the attention of the jury to the sworn testimony. The reasons we gave in our consideration of the preceding bill have equal application to this bill.

[38] Bill No. 24 was reserved to the overruling of a motion for a new trial. The motion merely alleges that the verdict is contrary to the law and the evidence. We have consistently held that such a motion presents nothing for review.

[39] Bills Nos. 26 and 27. It is not necessary to state the purport of these bills because this court cannot consider them. The judge in his per curiam says these bills were offered to be filed too late. They were objected to, and the objection was well taken. In the discussion of these bills counsel for defendant, on page 40 of his brief, says:

"Defendant was sentenced on the last day of the March term of court, and immediately after adjournment, possibly one or two days, counsel discovered that he had failed to prepare the two (2) bills in question, and did prepare them, and on a special day of court, in this parish, about one week later, and the first opportunity, he presented the bills to the district attorney and judge, and offered to file them. The district attorney objected to the filing as coming too late. The court allowed them filed subject to the objection."

The minutes of the court show that on March 19, 1926, bills of exception from 1 to 25, both inclusive, were submitted to the

court to be filed as of that date. Immediately thereafter the accused was regularly sentenced, and an order of appeal to the Supreme Court, returnable April 19, 1926, was entered. On March 29th, or ten days after sentence and appeal, counsel for defendant tendered and offered to file the two bills we are discussing. Counsel for the state objected to their being filed, but the court permitted them to be filed subject to the prosecuting attorney's objection thereto. All of the foregoing appear on page 10 of the transcript. It is admitted that defendant did not apply to the court for, and that no reservation of, any right was granted the defendant.

[40, 41] "Granting of appeal divests trial court of jurisdiction to exercise judicial discretion or judgment, but, as to ministerial duties necessary to have record show what took place, it has power, within reasonable bounds before granting appeal, to reserve the right to do thereafter whatever is necessary. * * *

"If accused obtains an appeal before bills of exceptions are signed or without being given time in which to present them, he waives or abandons them." State v. Young, 153 La. 606, 96 So. 275 ; State v. Barrett, 137 La. 535, 68 So. 945.

Finding no reversible error in the record, the verdict and sentence appealed from are affirmed.